# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CEDRIC CARTER,

                                       :

          Petitioner,                             Case No. 1:98-cv-853

                                       :          District Judge Thomas M. Rose

      -vs-                                   Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL,

                                       :

          Respondent.

---

## REPORT AND RECOMMENDATIONS ON THE MERITS

This is a habeas corpus action brought by Petitioner Cedric Carter pursuant to 28 U.S.C. §2254 and seeking relief from both his conviction for aggravated murder with death specifications and his resulting death sentence.

Mr. Carter is represented in this proceeding by counsel appointed pursuant to 21 U.S.C. §848(q) who did not represent him in any prior proceedings. However, Mr. Carter's current counsel filed his two (2) Ohio App.R. 26(b) applications after the commencement of this action. See, *infra*.

### Statement of Facts

The Supreme Court of Ohio described the facts and circumstances leading to Mr. Carter's indictment, trial, convictions, and adjudged sentence of death as follows:

> In the early morning hours of April 6, 1992, Frances Messinger was murdered while working alone as a clerk at a United Dairy Farmers convenience store ("UDF") in Cincinnati.

...

At approximately 2:15 a.m. on April 6, 1992, Carol Blum, a waitress working directly across the street from the UDF, called 911 and reported that she had just seen two black males running from the UDF. At trial, Blum testified that immediately prior to calling 911, she saw two men inside the UDF–one man in front of the counter with both arms extended toward the register with hands together pointing to something, and the second man behind the counter near the register. She saw the man behind the counter bend down, and then observed both men run out. The waitress did not see Messinger standing at any time while she was observing the incident. When Messinger's body was discovered shortly thereafter, an unmelted ice-cream cone was found on the floor of the UDF in the area in front of the counter near the exit doors.

On April 7 one Kenny Hill surrendered himself to authorities in connection with the Messinger murder. Based on information provided by Hill, police obtained a search warrant for an apartment at which Carter was temporarily residing. Carter was arrested in the early morning hours of April 8, 1992 during the course of the search which followed. During the search the police recovered the murder weapon, a .38 caliber Smith & Wesson five-shot revolver manufactured between 1877 and 1891, the hammer of which must be pulled back manually prior to firing of each round.

Following his arrest, Carter was taken to police headquarters to be interviewed. At approximately 3:50 a.m. Carter signed a waiver of rights form, which recited his rights as delineated in *Miranda v. Arizona,* (1966), 384 U.S. 436... . During the tape-recorded statement which followed, Carter admitted being present at the UDF during the course of the robbery, but initially identified Hill as the shooter. The police then discontinued taping the interview, and told Carter his statement was inconsistent with statements police had obtained from other witnesses. Upon resumption of the taping, Carter admitted that he was the shooter at the UDF robbery.

At trial the state and the defense agreed to many of the facts surrounding the robbery. Both parties are in accord that three men were involved: Carter, Hill (who also entered the UDF store), and Virgil Sims (who drove the car used by Carter and Hill before and after the murder). It is undisputed that Carter shot two times and that one bullet lodged in a carton of cigarettes in a cabinet behind the cash register, while the second struck Messinger in her forehead, killing her.

Carter testified at the trial and admitted involvement in the crime. Carter testified that he entered the UDF first (without a gun) and that Hill followed shortly thereafter, carrying with him the .38 caliber Smith & Wesson revolver, Carter ordered an ice cream cone, and while Messinger was standing at the cash register to accept payment for the cone, Hill passed the gun to Carter. Carter denied, however, that he had intended to kill Messinger. He testified that he had been a heavy user of crack cocaine; that he used significant amounts of alcohol, marijuana and crack cocaine during the period leading up to the murder; and that Hill was his supplier. Although Carter admitted that he entered the store with the intent to rob it, he testified that he and Hill had not talked about robbing the store until immediately prior to the robbery. He further testified that he never intended to be the one to hold the gun during the robbery. He admitted, however, that he knew the gun had bullets, and that Hill had showed him earlier in the day how to shoot it. He further admitted that before robbing the UDF the three had participated in "a lot" of robberies of drug dealers that same evening, and that only Hill had used the gun to threaten the victims in those robberies while Carter remained in the car. Carter testified that he first fired the gun at the floor to scare Messinger as she pushed the gun away and shut the register drawer. Carter testified he told Messinger to open the cash register, but she refused. He stated that Hill then suggested leaving, and that as they turned to leave, he fired a second shot when Messinger began fumbling in an apparent attempt to push an alarm button. Carter maintained consistently that he did not aim at Messinger, but instead aimed to fire a shot by her to scare her, and never intended to shoot her.

Medical testimony established that Messinger was killed as a result of a bullet wound which entered her forehead slightly left of the midline, The bullet traveled sharply left to right, and front to rear, with a slight upward angle. No stippling or gunpowder burns were found on Messinger's skin, indicating that the gun had been fired from a distance greater than one foot.

*State v. Carter,* 72 Ohio St.3d 545, 547-48 (1995).

**State court proceedings**

The Hamilton County Grand Jury indicted Mr. Carter on one (1) count of aggravated murder with specification and one (1) count of aggravated robbery with specification. Return of

-3-

Writ, Ex. A thereto (Doc. 2).  The trial began in the Hamilton County Common Pleas Court on July 7, 1992, with jury selection.  *Id.* at Ex. B.  On  July 11, 1992, the jury found Mr. Carter guilty of aggravated murder with specification and aggravated robbery with specification as charged in Indictment.  *Id.*; *see also,* Ex. C thereto.  On July 13, 1992, the sentencing trial began and on July 15, 1992, the jury recommended that the sentence of death be imposed on Mr. Carter.  *Id.*; *see also*, Ex. B attached thereto.   The court imposed a sentence of death on July 30, 1992, and on August 3, 1992, the trial court issued its written sentencing opinion as required by Ohio Revised Code §2929.03(F).  *Id.*        Mr. Carter appealed his conviction and sentence to the Hamilton County Court of Appeals raising the following Assignments of Error:

<u>ASSIGNMENT OF ERROR NO. I</u>

THE  LOWER  COURT  ERRED  BY  ADMITTING  INTO EVIDENCE THE OUT OF COURT STATEMENTS MADE BY KENNY HILL.

Issue 1. The State of Ohio Failed to prove that the Appellant and Kenny Hill ever participated in a conspiracy.

Issue 2.  Assuming arguendo the State established a conspiracy the statements made by Kenny Hill either prior to Appellant's participation in the conspiracy or after the conspiracy terminated were not admissible.

<u>ASSIGNMENT OF ERROR NO. II</u>

THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY THE FAILURE OF THE DEFENDANT'S COUNSEL TO MOVE TO CONSOLIDATE APPELLANT'S  INDICTMENT  WITH  THAT  OF  THE INDICTMENT PENDING AGAINST KENNY HILL AND VIRGIL SIMMS AND IN FAILING TO SUBPOENA KENNY HILL TO TESTIFY AT APPELLANT'S TRIAL IN VIOLATION OF THE APPELLANT'S  RIGHTS  UNDER  THE  SIXTH  AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND HIS CONCOMITANT RIGHTS UNDER

-4-

ARTICLE ONE SECTION 10 OF THE OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR NO. III

APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL BY THE FAILURE TO OBTAIN
AND ADDUCE EXPERT TESTIMONY THAT AT THE TIME
THE APPELLANT FIRED THE GUN THE VICTIM MOVED
INTO THE BULLET'S LINE OF TRAJECTORY WHICH WOULD
INDICATE THAT THE APPELLANT DID NOT DIRECTLY FIRE
AT THE VICTIM AND THUS DENIED THE APPELLANT HIS
RIGHTS UNDER THE SIXTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION
AND HIS CONCOMITANT RIGHTS UNDER ARTICLE ONE
SECTION TEN OF THE OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR NO. IV

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
APPELLANT BY REFUSING TO SUPPRESS FOR USE IN
EVIDENCE STATEMENTS ALLEGEDLY MADE BY
APPELLANT AFTER HE WAS TAKEN INTO CUSTODY AND
BEFORE HE WAS PROVIDED WITH THE ADVICE,
ASSISTANCE, AND REPRESENTATION OF COUNSEL WHICH
STATEMENTS WERE USED AS EVIDENCE IN CHIEF
AGAINST THE APPELLANT AT HIS TRIAL IN VIOLATION OF
HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION
AND THE CONSTITUTION OF THE STATE OF OHIO ARTICLE
ONE SECTION TEN.

### ASSIGNMENT OF ERROR NO. V

THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN
REFUSING TO ALLOW DEFENSE COUNSEL TO INQUIRE AS
TO WHY THE SEPARATE INDICTMENT OF KENNY HILL
AND VIRGIL SIMMS DID NOT CONTAIN THE DEATH
PENALTY SPECIFICATION AND BY THE FAILURE OF THE
COURT TO RECEIVE SAID INDICTMENT IN EVIDENCE ON
ITS OWN MOTION.

<u>ASSIGNMENT OF ERROR NO. VI</u>

THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN REFUSING THE JURY'S REQUEST TO FULLY EXPLAIN THE MEANING OF THE WORD "PURPOSELY" AS IT PERTAINS TO THE UNDERLYING FACTS OF THE WITHIN CAUSE.

<u>ASSIGNMENT OF ERROR NO. VII</u>

THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN REFUSING TO PROVIDE THE JURY WITH A TRANSCRIPT OF THE TESTIMONY OF DOCTOR DAVID I. CHIAPPONE WHICH WAS PRESENTED BY THE APPELLANT AT THE PENALTY PHASE OF THE PROCEEDINGS.

<u>ASSIGNMENT OF ERROR NO, VIII</u>

THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN THE PENALTY PHASE IN TWICE ALLOWING THE PROSECUTOR WITHOUT PROPER ADMONITION TO REFER TO ALLEGED PRIOR CRIMINAL CONDUCT OF THE APPELLANT WHICH DID NOT RESULT IN CONVICTIONS.

<u>ASSIGNMENT OF ERROR NO. IX</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTION FOR A CHANGE OF VENUE.

Issue 1.  Where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the trial court should transfer the case to another county not so permeated with publicity.

<u>ASSIGNMENT OF ERROR NO. X</u>

THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT IN ENTERING A SENTENCE OF DEATH WHEN DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTION, AMENDMENT VI.

Issue 1.  Has an accused been given effective assistance of counsel when his defense attorneys, in the penalty phase, elicit testimony

-6-

from a mitigation expert when said testimony, taken as a whole, is very unfavorable to the accused?

Issue 2. Has an accused been given effective assistance [of] counsel when his attorneys, lacking much in mitigatory evidence, fail to have the accused's mother testify on his behalf?

### ASSIGNMENT OF ERROR NO. XI

THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT IN DENYING HIS MOTION FOR INDIVIDUAL EXAMINATION OF PROSPECTIVE JURORS AND FOR THE SEQUESTRATION OF THOSE PASSED FOR CAUSE AND PROVISIONALLY SEATED.

Issue 1. The trial court abused its discretion in denying the motion of Defendant-Appellant for individual examination of prospective jurors and for the sequestration of those jurors passed for cause and provisionally seated.

### ASSIGNMENT OF ERROR NO. XII

THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT BY REFUSING TO ALLOW TWO SEPARATE JURIES FOR DECIDING THE GUILT AND PENALTY PHASES RESPECTIVELY, THEREBY DENYING DEFENDANT-APPELLANT HIS RIGHT TO A FAIR TRIAL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Issue 1. Was the Defendant-Appellant denied a fair trial when the trial court refused to have separate juries decide the guilt and penalty phases?

### ASSIGNMENT OF ERROR NO. XIII

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT/APPELLANT BY INSTRUCTING THE JURY THAT THEIR SENTENCING DECISION WAS MERELY A "RECOMMENDATION" THUS IMPROPERLY DIMINISHING THE JURY'S RESPONSIBILITY THEREBY VIOLATING DEFENDANT/APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THEIR

CORRESPONDING PROVISIONS UNDER THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR NO. XIV

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT/APPELLANT BY SUBMITTING TO THE JURY A VERDICT FORM AT THE PENALTY PHASE STATING THAT THE JURY'S VERDICT WOULD ONLY BE A "RECOMMENDATION".

Issue 1. Was it constitutionally proper for the trial court to instruct the jury that their verdict is merely a recommendation, thereby diminishing its sense of responsibility in sentencing Defendant/Appellant?

ASSIGNMENT OF ERROR NO. XV

THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT/APPELLANT AND IN VIOLATION OF HIS RIGHTS TO DUE PROCESS OF LAW UNDER THE UNITED STATES AND OHIO CONSTITUTIONS BY DENYING APPELLANT'S RULE 29 MOTIONS AND BY ENTERING JUDGMENT OF CONVICTION ON THE COUNT OF AGGRAVATED MURDER FOR THE REASON THAT THERE WAS INSUFFICIENT EVIDENCE PRODUCED TO SUPPORT CONVICTION FOR THAT OFFENSE.

ASSIGNMENT OF ERROR NO. XVI

THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT IN ENTERING A CONVICTION WHICH IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

Issue 1. Is there evidence sufficient to sustain a conviction for aggravated murder where there is next to no proof that Defendant/Appellant purposely caused the death of the victim?

Issue 2. Must a conviction be reversed, and a new trial granted, where the conviction for aggravated murder is contrary to the manifest weight of the evidence[?]

-8-

## ASSIGNMENT OF ERROR NO. XVII

THE DEATH SENTENCE VISITED UPON DEFENDANT/APPELLANT VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS IN THAT IT IS DISPROPORTIONATELY SEVERE WHEN COMPARED TO SENTENCES IN SIMILAR CASES.

Issue 1. Do the Eighth and Fourteenth Amendments to the Constitution of the United States prohibit sentences which are disproportionately severe in relation to the crime in the same jurisdictions?

## ASSIGNMENT OF ERROR NO. XVIII

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS MOTION TO SUBMIT A WRITTEN QUESTIONNAIRE TO BE COMPLETED BY PROSPECTIVE JURORS PRIOR TO THE VOIR DIRE THUS UNLAWFULLY AND IMPERMISSIBLY INTERFERING WITH APPELLANT'S CONSTITUTIONALLY GUARANTEED RIGHT TO QUESTION AND EXAMINE PROSPECTIVE JURORS IN A MEANINGFUL MANNER.

## ASSIGNMENT OF ERROR NO. XIX

THE TRIAL COURT COMMITTED REVERSIBLE, PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO ALLOW HIM INDIVIDUALLY TWENTY-FOUR PEREMPTORY CHALLENGES TO PROSPECTIVE JURORS.

Issue 1. In a capital case where the ultimate sanction is to be imposed, there is a correspondingly greater need for the reliability of the jury's verdict and recommendation.

Issue 2. In a bifurcated capital case, the jurors selected sit in two trials, and make separate deliberations as to guilt and punishment and both the guilt trial and the penalty trial must satisfy due process requirements necessitating the use of additional peremptory challenges in order to decide the case on the basis of the evidence before them and not otherwise.

<u>ASSIGNMENT OF ERROR NO. XX</u>

DEFENDANT/APPELLANT'S DEATH SENTENCE OFFENDS THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT IN THAT IN HAMILTON COUNTY THE DEATH PENALTY IS RESERVED ALMOST EXCLUSIVELY FOR THOSE WHO ARE CONVICTED OF THE AGGRAVATED MURDER OF WHITE PEOPLE.

Issue 1. Even a constitutional law may be unconstitutionally applied and where whether one is sentenced to death depends upon the race of his victim and those who kill whites are sentenced to death almost exclusively and those who kill blacks are almost uniformly spared, then the guarantee to the equal protection of the laws has been violated by the sentencing of any offender to death.

<u>ASSIGNMENT OF ERROR NO. XXI</u>

THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN SENTENCING THE APPELLANT TO DEATH WHERE THE SENTENCE OF DEATH WAS EXCESSIVE AND DISPROPORTIONATE IN TERMS OF THE UNDERLYING FACTS TO SIMILAR CASES IN OTHER JURISDICTIONS WHERE THE DEATH PENALTY WAS IMPOSED.

<u>ASSIGNMENT OF ERROR NO. XXII</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT'S CONSTITUTIONAL RIGHT TO RELIABILITY IN THE IMPOSITION OF THE SENTENCE OF DEATH BY BASING ITS DECISION TO IMPOSE THE DEATH SENTENCE UPON THE NONSTATUTORY AGGRAVATING FACTOR OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, BY GIVING INSUFFICIENT CONSIDERATION TO VALID MITIGATING FACTORS, AND BY CONSIDERING THE NONEXISTENCE OF SOME STATUTORY MITIGATING FACTORS AS NONSTATUTORY AGGRAVATING FACTORS.

Issue 1. The consideration of the nature and circumstances of the offense as an aggravating factor in an Ohio capital prosecution is unconstitutional both under the Eighth Amendment requirement of reliability in capital sentencing, also contained in the Ohio Constitution, and a further violation of the right to due process under the Ohio and Federal Constitutions.

-10-

A. The nature and circumstances of the case were unlawfully considered and relied upon as nonstatutory aggravating factors, were improperly and unlegally [sic] weighed and thus contributed to an unconstitutionally unreliable decision for death.

<u>ASSIGNMENT OF ERROR NO. XXIII</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN IMPOSING THE DEATH SENTENCE FOR THE OHIO DEATH PENALTY STATUTES ARE UNCONSTITUTIONAL, VIOLATE THE EIGHTH AMENDMENT PRESCRIPTION [sic] OF CRUEL AND UNUSUAL PUNISHMENTS, THE FOURTEENTH AMENDMENT GUARANTEES TO THE DUE PROCESS OF LAW AND TO THE EQUAL PROTECTION OF THE LAWS, AND ALSO BY THE CONCOMITANT PROVISIONS OF THE OHIO CONSTITUTION.

Issue 1. The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that consequently there is no rational state interest served by the ultimate sanction.

Issue 2. The use of the same operative fact to first elevate what would be "ordinary" murder to aggravated murder, and then to capital death-eligible aggravated murder permits the state (a) to obtain a death sentence upon less proof in a felony murder case than in a case involving prior calculation and design, although both crimes are ostensible equally culpable under the revised code, and (2) fails to narrow the capital class to those murderers for whom the death penalty is constitutionally appropriate.

Issue 3. The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio Capital Statutes quasi-mandatory and permits the execution of an offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as not that he deserves to live renders the Ohio Capital process arbitrary and capricious, and, in the absence of a requirement that before death may be imposed aggravating factors must <u>substantially</u> outweigh mitigating factors, unconstitutional.

Issue 4. The Ohio capital statutes are constitutionally infirm in that

-11-

they do not permit the extension of mercy by the jury even though aggravating factors may only slightly outweigh mitigating factors.

1.  The Ohio capital statutes are unconstitutional because they require the death sentence and fail to permit the jury to recommend mercy even though the aggravating factors only marginally outweigh the mitigating factors, and in spite of the fact that there may be factors strongly suggesting the appropriateness of a penalty less than death in a given case.

Issue 5.  The Ohio capital sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process and consequently death sentences are imposed and received without sufficient statutory guidance to juries and trial courts and reviewing courts to prevent the unconstitutional arbitrary and capricious infliction of the death penalty.

1.  To be [ ] constitutional, a death penalty scheme must provide standards to guide the sentencer in the reasonable exercise of the awesome power entrusted to it, in order to avoid the influence or arbitrariness and caprice in the sentencing to guide the sentencer, and reviewing courts, no death sentence imposed under such a system may constitutionally stand.

2.  There are no standards set forth for the guidance of juries, trial judges, or reviewing courts in the weighing of aggravating and mitigating factors sufficient to assure that any given death sentence has been constitutionally imposed, and therefore no death sentence may be constitutionally imposed.

ASSIGNMENT OF ERROR NO. XXIV

THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO INSTRUCT THE JURY THAT, IN THE EVENT OF A LIFE SENTENCE, THE ACCUSED MUST EITHER SERVE TWENTY FULL YEARS BEFORE PAROLE ELIGIBILITY ATTACHES, OR THIRTY FULL YEARS BEFORE PAROLE ELIGIBILITY ATTACHES, RESULTING IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO RELIABILITY IN THE DETERMINATION OF HIS SENTENCE.

ASSIGNMENT OF ERROR NO. XXV

-12-

THE JUDGMENT OF THE TRIAL COURT, AS WELL AS THE JURY, THAT THE AGGRAVATING FACTOR OF WHICH APPELLANT WAS CONVICTED OUTWEIGHED THE MITIGATING FACTORS PRESENTED BY THE DEFENSE IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND TO THE CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT, AND UNDER ART. I SEC. 9 OF THE OHIO CONSTITUTION.

Issue 1. Where the state fails to prove beyond a reasonable doubt that the aggravating factor of which the accused was convicted outweighs the mitigating factors presented by the defense, a death verdict, and a death sentence imposed by the trial court must be reversed and the accused resentenced to life imprisonment.

<u>ASSIGNMENT OF ERROR NO. XXVI</u>

THE TRIAL COURT COMMITTED PLAIN ERROR IN INSTRUCTING THE JURY AT THE PENALTY PHASE OF THE PROCEEDINGS AS TO EACH AND EVERY STATUTORY MITIGATING FACTOR, WHETHER OR NOT IT APPLIED TO THE FACTS AND CIRCUMSTANCES OF THE CASE.

<u>ASSIGNMENT OF ERROR NO. XXVII</u>

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT BY PERMITTING THE PROSECUTION TO CONVERT THE ABSENCE OF CERTAIN STATUTORY MITIGATING FACTORS INTO NONSTATUTORY AGGRAVATING FACTORS DURING PENALTY PHASE ARGUMENT, AND TO MAKE OTHER IMPROPER AND PREJUDICIAL ARGUMENTS, WHICH PREJUDICED APPELLANT'S CONSTITUTIONAL RIGHT TO RELIABILITY IN THE DETERMINATION OF WHETHER HE SHOULD BE EXECUTED, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, AND TO HIS RIGHTS UNDER ART. I SEC. 9 OF THE OHIO CONSTITUTION.

Issue 1. It is the defendant in a capital case who has the right to present and argue the mitigating factors. If he does not do so, no argument by the prosecutor or instructions by the trial court as to any

mitigating factors not raised by the defense is permissible.

*Id.* at Ex. D.

The Appeals Court affirmed Mr. Carter's conviction and sentence in all respects.

*State v. Carter,* No. C-920604, 1993 WL 512859 (Ohio App. 1ˢᵗ Dist. Nov. 3, 1993); *see also*, Return

of Writ, Ex. F thereto.

Mr. Carter appealed to the Ohio Supreme Court raising the following twenty-eight

(28) propositions of law:

PROPOSITION OF LAW NO. I

THE OUT OF COURT STATEMENTS MADE BY A CO-CONSPIRATOR ARE ONLY ADMISSIBLE IF IN FACT THERE HAS BEEN PROOF OF A CONSPIRACY, AND EVEN UPON PROOF OF CONSPIRACY THE STATEMENTS MADE BY THE CO-CONSPIRATOR EITHER PRIOR TO THE DEFENDANT'S PARTICIPATION IN THE CONSPIRACY OR AFTER THE CONSPIRACY WAS TERMINATED ARE NOT ADMISSIBLE.

PROPOSITION OF LAW NO. II

A DEFENDANT HAS BEEN DENIED HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND HIS CONCOMITANT RIGHTS UNDER ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION FOR THE FAILURE OF TRIAL COUNSEL TO MOVE TO CONSOLIDATE THE DEFENDANT'S INDICTMENT WITH THAT OF THE CO-DEFENDANTS OR TO SUBPOENA THE CO-DEFENDANTS TO TESTIFY AT TRIAL WHICH WOULD HAVE ALLOWED THE JURY TO CONSIDER THE FACT THAT THE CO-DEFENDANT WHO INITIATED THE BURGLARY AND PROVIDED THE GUN WAS ALLOWED TO PLEA [sic] TO A CHARGE WHICH DID NOT CARRY THE DEATH PENALTY.

PROPOSITION OF LAW NO. III

A DEFENDANT HAS BEEN DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH

-14-

AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND HIS CONCOMITANT RIGHTS UNDER ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION BY THE FAILURE OF TRIAL COUNSEL TO OBTAIN AND ADDUCE EXPERT TESTIMONY THAT AT THE TIME THE DEFENDANT FIRED THE GUN THE VICTIM WAS MOVING AND IN FACT MOVED INTO THE BULLET'S LINE OF TRAJECTORY WHICH WOULD ESTABLISH THAT THE DEFENDANT DID NOT DELIBERATELY FIRE AT THE VICTIM.

## PROPOSITION OF LAW NO. IV

IT IS ERROR FOR A TRIAL COURT TO REFUSE TO SUPPRESS FOR USE IN EVIDENCE THAT THE STATEMENTS ALLEGEDLY MADE BY A DEFENDANT AFTER HE WAS TAKEN INTO CUSTODY AND BEFORE HE WAS PROVIDED WITH THE ADVICE, ASSISTANCE, AND REPRESENTATION OF COUNSEL WHEN SAID STATEMENTS WERE USED IN EVIDENCE IN CHIEF AGAINST HIM AT HIS TRIAL.

## PROPOSITION OF LAW NO. V

IT IS PREJUDICIAL ERROR FOR A TRIAL COURT TO REFUSE TO ALLOW DEFENSE COUNSEL TO INQUIRE AS TO WHY A SEPARATE INDICTMENT OF CO-DEFENDANTS DID NOT CONTAIN A DEATH PENALTY SPECIFICATION AND FOR THE COURT TO REFUSE TO ADMIT SAID INDICTMENT INTO EVIDENCE.

## PROPOSITION OF LAW NO. VI

IT IS PREJUDICIAL ERROR FOR A TRIAL COURT TO REFUSE THE JURY'S REQUEST IN A DEATH PENALTY CASE TO FULLY EXPLAIN THE MEANING OF THE WORD "PURPOSELY" PARTICULARLY WHEN THE ONLY ISSUE AT TRIAL IS WEATHER THE DEFENDANT DELIBERATELY FIRED AT THE VICTIM.

## PROPOSITION OF LAW NO. VII

IT IS PREJUDICIAL ERROR IN THE PENALTY PHASE OF A DEATH PENALTY CASE TO TWICE ALLOW THE PROSECUTOR WITHOUT PROPER ADMONITION TO REFER

TO ALLEGED PRIOR CRIMINAL CONDUCT OF THE
DEFENDANT WHICH DID NOT RESULT IN CONVICTIONS.

### PROPOSITION OF LAW NO. VIII

IT IS ERROR FOR A TRIAL COURT TO REFUSE TO PROVIDE
THE JURY WITH A TRANSCRIPT OF THE TESTIMONY OF A
DEFENDANT'S MITIGATION EXPERT.

### PROPOSITION OF LAW NO. IX

IT IS PREJUDICIAL ERROR TO THE ACCUSED FOR THE
TRIAL COURT TO REFUSE TO TRANSFER A CASE TO
ANOTHER COUNTY NOT SO PERMEATED WITH PUBLICITY
WHEN THERE IS A REASONABLE LIKELIHOOD THAT
PREJUDICIAL NEWS PRIOR TO TRIAL WILL PREVENT A
FAIR TRIAL.

### PROPOSITION OF LAW NO. X

AN ACCUSED IS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL UNDER THE UNITED STATES
CONSTITUTION, AMENDMENT VI, AND THE OHIO
CONSTITUTION, ARTICLE I, SECTION 10, WHEN HIS
DEFENSE ATTORNEYS, IN THE PENALTY PHASE OF A
CAPITAL CASE, ELICIT TESTIMONY FROM A MITIGATION
EXPERT WHEN SAID TESTIMONY, TAKEN AS A WHOLE, IS
VERY UNFAVORABLE TO THE ACCUSED.

### PROPOSITION OF LAW NO. XI

AN ACCUSED IS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL UNDER THE UNITED STATES
CONSTITUTION, AMENDMENT VI, AND THE OHIO
CONSTITUTION, ARTICLE I, SECTION 10, WHEN HIS
DEFENSE ATTORNEYS, LACKING MUCH IN MITIGATORY
EVIDENCE, FAIL TO HAVE THE ACCUSED'S MOTHER
TESTIFY ON HIS BEHALF.

### PROPOSITION OF LAW NO. XII

IT IS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO
DENY THE ACCUSED'S MOTION FOR INDIVIDUAL
EXAMINATION OF PROSPECTIVE JURORS AND FOR THE

SEQUESTRATION OF THOSE JURORS PASSED FOR CAUSE
AND PROVISIONALLY SEATED.

## PROPOSITION OF LAW NO. XIII

IT IS A DENIAL OF A FAIR TRIAL UNDER THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION
WHEN THE TRIAL COURT REFUSES TO ALLOW TWO
SEPARATE JURIES FOR DECIDING THE GUILT AND
PENALTY PHASES IN A CAPITAL CASE.

## PROPOSITION OF LAW NO. XIV

IT IS PLAIN ERROR, IF NOT SUBSTANTIALLY PREJUDICIAL,
FOR THE TRIAL COURT TO INSTRUCT THE JURY THAT
THEIR SENTENCING DECISION IS MERELY A
"RECOMMENDATION", THUS IMPROPERLY DIMINISHING
THE JURY'S RESPONSIBILITY AND THEREBY VIOLATING
THE ACCUSED'S RIGHTS UNDER THE EIGHTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND THEIR CORRESPONDING PROVISIONS
UNDER THE OHIO CONSTITUTION.

## PROPOSITION OF LAW NO. XV

IT IS PLAIN ERROR, IF NOT SUBSTANTIALLY PREJUDICIAL,
FOR THE TRIAL COURT TO SUBMIT TO THE JURY A
VERDICT FORM AT THE PENALTY PHASE STATING THAT
THE JURY'S VERDICT WOULD ONLY BE A
"RECOMMENDATION".

## PROPOSITION OF LAW NO. XVI

IT IS SUBSTANTIALLY PREJUDICIAL TO AN ACCUSED AND
IN VIOLATION OF THIS [sic] RIGHT TO DUE PROCESS OF
LAW UNDER THE UNITED STATES AND OHIO
CONSTITUTION, FOR THE TRIAL COURT TO DENY HIS
CRIMINAL RULE 29 MOTIONS TO DISMISS, AND TO ENTER
A JUDGMENT OF CONVICTION ON THE COUNT OF
AGGRAVATED MURDER WHEN THERE IS INSUFFICIENT
EVIDENCE THAT THE ACCUSED PURPOSELY CAUSED THE
DEATH OF THE VICTIM.

## PROPOSITION OF LAW NO. XVII

-17-

IT IS SUBSTANTIALLY PREJUDICIAL TO AN ACCUSED AND IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE UNITED STATES AND OHIO CONSTITUTIONS, FOR THE TRIAL COURT TO ENTER A CONVICTION FOR AGGRAVATED MURDER WHICH IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## PROPOSITION OF LAW NO. XVIII

A DEATH SENTENCE THAT IS DISPROPORTIONATELY SEVERE WHEN COMPARED TO SENTENCES IN SIMILAR CASES IN THE SAME JURISDICTION VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XIX

IT IS PREJUDICIAL TO THE ACCUSED AND IMPERMISSIBLY INTERFERES WITH THE CONSTITUTIONAL RIGHT TO QUESTION AND EXAMINE JURORS IN A MEANINGFUL MANNER, WHEN THE TRIAL CURT DENIES THE ACCUSED'S MOTION TO SUBMIT A WRITTEN QUESTIONNAIRE TO BE COMPLETED BY PROSPECTIVE JURORS PRIOR TO THE VOIR DIRE.

## PROPOSITION OF LAW NO. XX

IT IS PREJUDICIAL FOR THE TRIAL COURT TO DENY THE ACCUSED'S MOTION TO ALLOW HIM TWELVE PEREMPTORY CHALLENGES DURING JURY SELECTION.

## PROPOSITION OF LAW NO. XXI

A DEATH SENTENCE OFFENDS THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT WHEN IT IS RESERVED, ALMOST EXCLUSIVELY, FOR THOSE WHO ARE CONVICTED OF THE AGGRAVATED MURDER OF WHITE PEOPLE.

## PROPOSITION OF LAW NO. XXII

IT IS PREJUDICIAL ERROR FOR THE TRIAL COURT TO SENTENCE A DEFENDANT TO DEATH WHEN THE SENTENCE OF DEATH IS EXCESSIVE AND DISPROPORTIONATE IN TERMS OF THE UNDERLYING FACTS TO SIMILAR CASES IN OTHER JURISDICTIONS WHERE THE DEATH PENALTY WAS IMPOSED.

## PROPOSITION OF LAW NO. XXIII

IT IS A DENIAL OF THE CONSTITUTIONAL RIGHT TO THE RELIABILITY IN THE IMPOSITION OF A DEATH SENTENCE WHEN THE TRIAL COURT BASES SUCH A DECISION UPON THE NONSTATUTORY AGGRAVATING FACTOR OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, GIVES INSUFFICIENT CONSIDERATION TO VALID MITIGATING FACTORS, AND CONSIDER THE NONEXISTENCE OF SOME STATUTORY MITIGATING FACTORS AS NONSTATUTORY AGGRAVATING FACTORS.

## PROPOSITION OF LAW NO. XXIV

THE OHIO DEATH PENALTY STATUTES ARE UNCONSTITUTIONAL AND VIOLATE THE EIGHTH AMENDMENT PRESCRIPTION [sic] OF CRUEL AND UNUSUAL PUNISHMENT, THE FOURTEENTH AMENDMENT GUARANTEE TO DUE PROCESS OF LAW AND TO THE EQUAL PROTECTION OF LAW AND ALSO VIOLATE THE CONCOMITANT PROVISIONS OF THE OHIO CONSTITUTION.

## PROPOSITION OF LAW NO. XXV

IT IS PREJUDICIAL ERROR FOR A TRIAL COURT TO FAIL TO INSTRUCT THE JURY THAT IN THE EVENT OF A LIFE SENTENCE THE ACCUSED MUST EITHER SERVE TWENTY-FOUR YEARS BEFORE PAROLE ELIGIBILITY ATTACHES OR THIRTY-FOUR YEARS BEFORE A PAROLE ELIGIBILITY ATTACHES AND THUS DENIED THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO RELIABILITY IN DETERMINATION OF HIS SENTENCE.

## PROPOSITION OF LAW NO. XXVI

WHEN THE JUDGMENT OF THE TRIAL COURT, AS WELL AS THE JURY, IS THAT THE AGGRAVATING FACTORS OF WHICH THE DEFENDANT WAS CONVICTED OUTWEIGHED THE MITIGATING FACTORS IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE THE DEFENDANT HAS BEEN DENIED THE RIGHT TO DUE PROCESS OF LAW AS WELL AS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

PROPOSITION OF LAW NO. XXVII

IT IS PREJUDICIAL ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY AT THE DEATH PENALTY PHASE OF A DEATH PENALTY PROCEEDING AS TO EACH AND EVERY STATUTORY MITIGATING FACTOR WHETHER OR NOT IT APPLIED TO THE FACTS AND CIRCUMSTANCES OF THE CASE.

PROPOSITION OF LAW NO. XXVIII

IT IS PLAIN ERROR FOR THE TRIAL COURT TO PERMIT THE PROSECUTION TO CONVERT THE ABSENCE OF CERTAIN STATUTORY MITIGATING FACTORS INTO NON-STATUTORY AGGRAVATING FACTORS DURING THE PENALTY PHASE ARGUMENT AND TO MAKE OTHER IMPROPER AND PREJUDICIAL ARGUMENTS.

Return of Writ, Ex. H thereto.

The Ohio Supreme Court found that none of Mr. Carter's claims afforded a basis for reversing his conviction or sentence and the court overruled all of his propositions of law. *State v. Carter,* 72 Ohio St.3d 545 (1995); *see also,* Return of Writ, Ex. J thereto. The court also independently reviewed Mr.Carter's death sentence, as required by R.C. §2929.05(A) and affirmed the death sentences. *Carter,* 72 Ohio St.3d at 563. The United States Supreme Court denied certiorari. *Carter v. Ohio,* 516 U.S. 1014 (1995).

Mr. Carter pursued post-conviction relief pursuant to Ohio Revised Code §2953.21

-20-

alleging thirteen (13) causes of action:

### FIRST CAUSE OF ACTION

The judgment against Petitioner is void or voidable because his capital conviction was secured through the use of a statutory scheme which violates the Eighth and Fourteenth Amendments to the United States Constitution and Section 9, Article I of the Ohio Constitution.

### SECOND CAUSE OF ACTION

The judgment against the Petitioner is void or voidable because of the court's refusal to further explain to the jury in response to their question in terms of the underlying facts of Petitioner's case the statutory definition of the word "PURPOSELY" as defined in O.R.C. 2903.01. Petitioner submits that as a result of the Court's refusal to further instruct the jury the Petitioner was denied his constitutional rights as provided for in the Fifth, Sixth and Fourteenth Amendments to the United States Constitution as well as the Concomitant Provisions of the Ohio Constitution.

### THIRD CAUSE OF ACTION

The judgment and sentence against Petitioner is [sic] void or voidable because Petitioner's rights were violated as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Concomitant Provisions of the Ohio Constitution [as a result of trial counsel's failure to interview Kenneth Hill or to call him as a witness].

### FOURTH CAUSE OF ACTION

The judgment and sentence against Petitioner is [sic] void or voidable because Petitioner's rights were violated as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Concomitant Provisions of the Ohio Constitution [as a result of trial counsel's improper questioning of Petitioner and failure to make certain objections].

### FIFTH CAUSE OF ACTION

Petitioner Carter's conviction and sentence are void or voidable because the trial court gave improper instructions and committed error during the mitigation phase of the proceedings.

## SIXTH CAUSE OF ACTION

Petitioner's conviction and death sentence are void or voidable because his trial counsel relied upon a mitigation specialist who failed to conduct an investigation or collection of mitigating evidence on behalf of Petitioner.

## SEVENTH CAUSE OF ACTION

The failure of Petitioner's counsel to meaningfully present the mitigating factor of residual doubt through consistent, meaningful argument in opening statement and closing argument at the mitigation phase of his trial denied him the effective assistance of counsel and violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eights, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

## EIGHTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable because the Ohio death penalty scheme is unconstitutional on its face and in violation of the United States Constitution and the Ohio Constitution.

## NINTH CAUSE OF ACTION

The judgment and sentence against the Petitioner are void or voidable because Petitioner['s] rights were violated as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and concomitant provisions of the Ohio Constitution [due to the ineffective assistance of trial counsel due to counsel's not permitting Petitioner's mother and step-father to be present in the courtroom during trial and failure to call Petitioner's mother as a witness].

## TENTH CAUSE OF ACTION

The judgment and sentence against Petitioner is [sic] void or voidable because Petitioner's rights were violated as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and concomitant provisions of the Ohio Constitution by reason of prosecutorial misconduct in the penalty phase of the trial by introducing into evidence hearsay testimony as to the Petitioner which was highly prejudicial.

### ELEVENTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable because Petitioner was denied due process of law, the equal protection of the law, as well as a fair trial by the refusal of the trial court to provide the jury pursuant to their request with a written transcript of Petitioner' mitigation expert, Dr. David I. Chapone [sic].

### TWELFTH CAUSE OF ACTION

Petitioner' conviction and sentence are void or voidable because of ineffective assistance of counsel in failing to have the Petitioner testify under oath at the penalty phase of the trial.

### THIRTEENTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable because the cumulative effects of the errors and omissions as presented in this petition ... have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

Return of Writ, Ex. K thereto.

The trial court denied Mr. Carter's post-conviction petition. *State v. Carter,* No. B022977 (Common Pleas Court of Hamilton Cty. August 26, 1996); *see also*, Return of Writ, Ex. P thereto. Mr. Carter appealed the trial court's decision raising one assignment of error and several issues within that assignment of error:

### ASSIGNMENT OF ERROR NO. 1

THE LOWER COURT DENIED APPELLANT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AS WELL AS TO EQUAL PROTECTION OF THE LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEE AND DENYING APPELLANT'S PETITION TO VACATE AND SET ASIDE HIS JUDGMENT OF CONVICTION WITHOUT A HEARING.

1. Under Ohio Law when a Petition for Post Conviction Relief

clearly shows substantive grounds for relief based upon attached Affidavits, sworn statements as well as the original record itself it is prejudicial error for the Trial Court to fail to conduct a prompt hearing thereon.

2.  Appellant was denied his right to effective assistance of counsel as well as to due process of law and the equal protection of the law during the guilt phase of the trial.

3.  Appellant was denied his right to effective assistance of counsel as well as to due process of law and the equal protection of the law during the penalty phase of the trial.

4.  Appellant was denied his constitutional right to due process of law as well as to equal protection of the law as the result of rulings made by the trial court during jury deliberations in both the guilt phase and penalty phases [sic] of the trial.

[5.]  Appellant further submits that he was denied the effective assistance of counsel as well as the due process of law and equal protection of law by the failure of his trial counsel to interview separately indicted co-defendant Kenny Hill, the only other person in the store at the time the shooting occurred and to offer him as a witness both in the guilt and penalty phase of the trial.

[6.] The trial court erred in finding it was precluded from considering or conducting hearing thereon by Evidence Rule 606(B) the statement made by jury foreman Michael Reinstatler in his sworn statement.

Return of Writ, Ex. R thereto.

The court of appeals overruled Mr. Carter's Assignment of Error and affirmed the trial court's denial of Mr. Carter's post-conviction petition. *State v. Carter,* No. C-960718, 1997 WL 705487 (Ohio App. 1st Dist. Nov. 14, 1997); *see also,* Return of Writ, Ex. T thereto. The Ohio Supreme Court declined to hear the case dismissing Mr. Carter's appeal as not involving any substantial constitutional question. *State v. Carter,* 81 Ohio St.3d 1467 (1998). The United States Supreme Court denied certiorari. *Carter v. Ohio,* 525 U.S. 848 (1998).

-24-

After he filed the present Petition in this Court, Mr. Carter filed in state court an application to reopen his appeal pursuant to Ohio App.R. 26(B) and *State v. Murnahan,* 63 Ohio St.3d 60 (1992).  In that application, Mr. Carter raised the following claims:

> 1.  The failure of trial counsel to use the services of an expert to explain the effects of cocaine ingestion and its effects on the ability to understand and waive "Miranda" denied Appellant the effective representation of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 2.  The failure of trial counsel to use the services of an expert to explain how Appellant's test scores, school grades and lack of intelligence affected his ability to understand and waive "Miranda" denied Appellant the effective representation of counsel in violation of his right to Due Process and right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 3.  The failure of trial counsel to investigate and present evidence of adverse pretrial publicity and its effect on Appellant's trial denied Appellant the effective representation of counsel in violation of his right to Due Process and his right to counsel and guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 4.  The failure of trial counsel to request the jury be "Life Qualified" and failure of trial counsel to voir dire the prospective jurors regarding an automatic death vote upon conviction of murder denied Appellant the effective representation of counsel in violation of his right to Due Process and his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 5.  The failure of the trial court during its voir dire of the prospective jurors to inquire whether they might automatically impose the death penalty or if any had any reason they could not consider a life sentence upon a verdict of guilty violated Appellant's right to Due Process and his right to an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 6.  The failure of trial counsel to remove a juror who openly admits that he will only sit if his verdict is not considered final and admits an inability to be impartial denied Appellant the effective representation of counsel and right to a trial by an impartial jury in violation of his right to Due Process and his right to counsel as

guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

7. The failure of trial counsel to conduct a meaningful voir dire denied Appellant the effective representation of counsel in violation of his right to Due Process, his right to counsel and his right to an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

8. The filing of a plea of Not Guilty by Reason of Insanity by trial counsel denied Appellant to effective representation of counsel in violation of his right to Due Process and his right to counsel as guaranteed by the Sixth and Fourteenth amendments to the United States Constitution.

9. The judgment and conviction against Appellant are void or voidable because the state's prosecutor improperly cross-examined the defense's expert witness, Dr. Chiappone, with hearsay conclusions from sanity reports prepared by other individuals in violation of his rights as guaranteed under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

10. The judgment and conviction against Appellant are void because he received ineffective assistance of counsel at the time of the mitigation hearing when counsel failed to object to the improper cross-examination of their mitigation expert with hearsay conclusions obtained by other experts in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

11. The planned execution of Appellant who is mentally retarded violates Appellant's right to Due Process, Equal Protection and against cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

12. The failure to ever select an African-American grand jury foreman in Hamilton County violated Appellant's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

13. Underrepresentation of African-Americans in the pool from which Appellant's grand jury was selected violated Appellant's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

-26-

14.  The trial court erred in instructing the jury on the element of purposeful during the guilt determination phase of the trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  As a result, Appellant's convictions and death sentence are constitutionally infirm.

15.  The trial court excluded the public including Appellant's family from the courtroom during portions of jury selection thus denying Appellant his right to Due Process and right to a public trial.

16.  The judgment and conviction against Appellant are void or voidable because the trial court improperly admitted into evidence statements of a witness which he attributed to a co-conspirator without the requisite prima facie showing of existence of a conspiracy and when the trial court allowed into evidence statements attributable to that same co-conspirator which were made after the completion of the conspiracy and were not in furtherance of the conspiracy in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

17.  Appellant's sentence of death is void or voidable because he was denied effective assistance of counsel in the preparation and presentation of the mitigation phase of his capital trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

18.  Appellant's death sentence is void or voidable because evidence which should have been presented to the jury was excluded due to the ineffectiveness of trial counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

19.  The judgment against Appellant is void or voidable because his trial counsel was ineffective at the mitigation phase when he offered a closing argument which was disjointed, lacking in cohesion, and repetitively nonsensical in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

20.  Trial counsel's failure to obtain a mitigation specialist who could have assisted counsel in the preparation and presentation of the mitigation phase of Appellant's trial, and could also have provided information which would have assisted Appellant in other phases of the trial, deprived Appellant of his Sixth, Eighth, and Fourteenth Amendment rights to effective assistance of counsel, due process,

equal protection, and against cruel and unjust punishment.

21. The judgment against Appellant is void or voidable because the trial court improperly instructed the jury during the penalty phase that a recommendation of a life sentence had to be unanimous in violation of Appellant's rights to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

22. The judgment against Appellant is improper because trial counsel was ineffective in failing to ask for or to require the trial court to keep a complete record of all of the proceedings in Appellant's capital trial by allowing unrecorded sidebar conferences to occur, thus violating Appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

23. The judgment and conviction against Appellant is void or voidable because the trial court allowed the prosecutor, over objection, to address issues outside the scope of proper rebuttal in his final closing argument, violating Appellant's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

24. The judgment and conviction against Appellant are void or voidable due to the existence of opinion testimony in the Victim Impact statement recommending the death penalty in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Doc. 61, Attachment [8] thereto at 18-22).

The court of appeals denied Mr. Carter's Motion to Reopen on the grounds of untimeliness and good cause. *State v. Carter,* No. C-920604, 1999 WL 33441359 (Ohio App. 1st Dist. Oct. 21, 1999). Mr. Carter did not appeal that denial.

On July 19, 2000, Mr. Carter requested that the court of appeals appoint counsel for him to prepare and file an application to reopen his direct appeal pursuant to Ohio App.R. 26(B) and the court of appeals denied his request. *See, State v. Carter,* 93 Ohio St.3d 581, 582 (2001). On September 28, 2000, Mr. Carter filed a second application to reopen his initial appeal pursuant to

Ohio App.R. 26(B) and *Murnahan*. *Id.* In that application, Mr. Carter raised the same grounds as he raised in his first application to reopen, *see, supra.*, as well as two (2) additional grounds:

> 1. The failure of counsel to perfect an appeal to the Ohio Supreme Court from this Court's dismissal of Carter's Application to Reopen constituted ineffective assistance of counsel and his rights under the Fourteenth Amendment to the United States Constitution; and
>
> 2. The judgment and conviction against Appellant are void or voidable due to the Prosecution's purposeful exclusion of a juror on account of race in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Doc. 61, Attachment [8] thereto at 18-22).

The court of appeals denied Mr. Carter's motion to reopen his direct appeal on the basis that Ohio App.R. 26(B) "makes no provision for filing successive applications to reopen." *Carter,* 93 Ohio St.3d at 582, *citing, State v. Carter,* No C-920604 (Hamilton Cty. Ct. App.[1st Dist.] Apr. 9, 2001).

Mr. Carter appealed the court of appeals' denial of his motion to reopen to the Ohio Supreme Court. *Carter,* 93 Ohio St.3d 581. In that appeal, Mr. Carter raised five (5) propositions:

> Proposition of Law No. I:
>
> Indigent Ohio criminal defendants have the right to the effective assistance of counsel to prepare and timely file an application to reopen a direct appeal to present a claim of ineffective assistance of appellate counsel. The failure of counsel to perfect an appeal to the Ohio Supreme Court following the dismissal, by the court of appeals, of an application to re-open constitutes ineffective assistance of counsel.
>
> Proposition of Law No. II:
>
> The Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 3, 10 and 16 of the Ohio Constitution entitle indigent persons pursuing a claim of ineffective assistance of appellate counsel to pre-application appointment of counsel to

-29-

prepare and file an application to reopen under App.R. 26(B).

Proposition of Law No. III:

An appellant establishes good cause for failing to file an application to reopen his direct appeal to raise a claim of ineffective assistance of counsel where new counsel do not volunteer to represent the defendant until five years after his sentence and conviction are affirmed.

Proposition of Law No. IV:

Appellate counsel renders ineffective assistance when they neglect to present issues that have a reasonable probability of success on appeal where a "reasonable probability" is defined as a probability sufficient to undermine one's confidence in the outcome.

Proposition of Law No. V:

In a capital case, where the indictment does not contain a statutory element of aggravated murder and where a jury is not required to find beyond a reasonable doubt the statutory sentence-increasing fact under R.C. § 2903.01(D) that, the defendant be specifically found to have intended to cause the death of another, a defendant has been convicted of the lowest grade of the offense of murder and must be sentenced to the range that applies in the absence of that statutory sentencing-increasing fact.

(Doc. 61, Attachment [8] thereto).

In affirming the court of appeals, the Ohio Supreme Court, citing, *inter alia, Wainwright v. Torna,* 455 U.S. 586, 587-88 (1982), first determined that Mr. Carter had no right to counsel to pursue an appeal to the Ohio Supreme Court of the dismissal of his first Rule 26(B) application to reopen and therefore he could be unconstitutionally deprived of the effective assistance of counsel by his counsel's failure to file such an appeal.  *Carter,* 93 Ohio St.3d at 582.

Next, citing, *inter alia, Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987), the Ohio Supreme Court  determined that Mr. Carter could not complain about the court of appeals' refusal

to appoint new counsel to pursue the appeal of the denial of his Rule 26(B) application because the right to appointed counsel extends to the *first* appeal as of right, *and no further. Carter, supra* (emphasis in original).

> The Ohio Supreme Court then noted:
>
> In his third proposition, Carter argues that he established "good cause" for his failure to file a timely application pursuant to App.R. 26(B). However, the court of appeals dismissed Carter's first application to reopen his direct appeal, finding no good cause. *No appeal was made of that decision.* Thus, Carter's second application to reopen his direct appeal pursuant to App.R. 26(B) is foreclosed by the doctrine of *res judicata.* See *State v. Bell* (1995), 73 Ohio St.3d 32, 34 ... .

*Carter,* 93 Ohio St.3d at 582 (emphasis supplied).

Finally, the Ohio Supreme Court noted that Mr. Carter's four and fifth propositions related to the merits of issues that he claimed his former appellate lawyers should have raised and that he claimed his appellate counsel were constitutionally ineffective because they failed to raise twenty-six specific assignments of error on his direct appeal before the court of appeals. The court determined that since it had found Mr. Carter's successive petition to be barred by the doctrine of *res judicata*, it need not consider those issues. *Id.* at 583.

**Proceedings in this Court**

Mr. Carter filed his Petition for Writ of Habeas Corpus on November 12, 1998, and originally raised fifty (50) "cause[s] of action"[1]. (Doc. 1). On September 27, 1999, District Judge Herman J. Weber, to whom this matter was originally assigned, granted in part and denied in part Mr. Carter's Motion for Leave to Expand the Record. (Doc. 28). On April 10, 2000, pursuant to

---

[1] Mr. Carter uses the phrase "cause of action" to refer to separate claims, usually referred to as "ground for relief". The Court follows Mr. Carter's usage.

28 U.S.C. §§ 631(b)(1)(A), (B), (C) and 636(b)(3), Judge Weber referred the matter to the undersigned. (Doc. 37). On July 24, 2000, I granted the parties' Joint Motion to Expand the Record to include the entire trial file from Attorney Herbert J. Haas. (Doc. 44, Notation Order thereon). Subsequently, Mr. Haas' August 10, 2000, deposition was filed with this Court. (Doc. 45).

On March 19, 2002, Judge Weber adopted my February 26, 2002, Report and Recommendations and, noting that they had been withdrawn, dismissed with prejudice Mr. Carter's Causes of Action 4, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 34, 35, 37, 38, 39, 40, 41, 43, 44, and 49. (Doc. 81). In addition, the Court dismissed without prejudice Mr. Carter's Thirteenth Cause of Action, and deemed his Twentieth Cause of Action withdrawn. *Id.*

On July 14, 2003, I granted Mr. Carter's Motion to Stay this case and hold it in abeyance pending the state's review of Mr. Carter's claim pursuant to *Atkins v. Virginia,* 563 U.S. 304 (2002).

This case was reassigned to District Judge Thomas M. Rose on July 16, 2002, (Doc. 86), and on September 30, 2003, Judge Rose adopted my January 25, 2003, Report and Recommendations, (Doc. 89), and dismissed Mr. Carter's Twentieth, Thirty-Second, and Forty-Second Claims for Relief. (Doc. 101). Judge Rose also overruled Mr. Carter's Objections to my January 29, 2003, Decision and Order granting in part and denying in part Mr. Carter's Renewed Motion for Evidentiary Hearing. (Doc. 100; 90). Specifically, in my January 29, 2003, Decision and Order I determined that Mr. Carter could present at an evidentiary hearing the testimony of Messrs. David J. Boyd and Bruce K. Hust, his direct appeal counsel. (Doc. 90).

Mr. Carter notified the Court on February 9, 2005, that he had voluntarily dismissed

his *Atkins* claim in state court, (Doc. 106), and on February 10, 2005, I dissolved the stay. (Doc. 107).

An evidentiary hearing was held on October 20, 2005, at which both Mr. Boyd and Mr. Hust testified. (Doc. 122). The parties subsequently briefed the issues. (Doc. 124; 127; 128).

**Procedural Default**

The first issue which this Court must address is whether Mr. Carter is procedurally barred from litigating in this Court any of his remaining Causes of Action. Stated differently, the Court must determine whether, as Respondent alleges, certain of Mr. Carter's remaining Causes of Action have been procedurally defaulted. The Causes of Action at issue are as follows:

### FIRST CAUSE OF ACTION

**The failure of trial counsel to use the services of an expert to explain the effects of cocaine ingestion and its effects on the ability to understand and waive "Miranda" denied Petitioner the effective representation of counsel in violation of his rights to Due Process and right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.**

### SECOND CAUSE OF ACTION

**The failure of trial counsel to use the services of an expert to explain how Petitioner's test scores, school grades and lack of intelligence affected his ability to understand and waive "Miranda" denied Petitioner the effective representation of counsel in violation of his right to Due Process and right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.**

### THIRD CAUSE OF ACTION

**The failure of trial counsel to investigate and present evidence of adverse pre-trial publicity and its effects on Petitioner's trial denied Petitioner the effective representation of counsel in violation of his right to Due Process and his right to counsel as guaranteed by the Sixth and Fourteenth Amendment [sic] to the**

-33-

United States Constitution.

## NINTH CAUSE OF ACTION

**The filing of a Not Guilty By Reason Of Insanity [plea] by trial counsel denied Petitioner the effective representation of counsel in violation of his right to Due Process and his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.**

## TWENTY-EIGHTH CAUSE OF ACTION

**Petitioner's sentence of death is void or voidable because he was denied effective assistance of counsel in the preparation and presentation of the mitigation phase of his capital trial in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution**.

1.   Counsel's initial error was the failure to obtain a mitigation specialist.   Instead, counsel requested the appointment of a psychologist from the local court clinic.  Dr. David Chiappone, while an adroit psychologist, had virtually no experience in the preparation and presentation of mitigation material in a death penalty case. Furthermore, the Ohio Public Defender has long provided mitigation specialists to assist appointed counsel in the long and grueling gathering of information that becomes a biography of the accused's life. Dr. Chiappone simply scratched the surface of what should have been presented.

2.   Petitioner's history disclosed that he is borderline mentally retarded.  Furthermore, Dr. Chiappone opined that Petitioner had had a number of head injuries which led him to believe that there may have been a neurological impairment.  Unfortunately, no effort was made to acquire a cat-scan or other neurological examinations to present the existence or nonexistence of an organic reason for Petitioner's behavior.

3.  Petitioner's school records from Selma, Alabama were partially made available to Dr. Chiappone.   These records disclosed that national testing had been performed on Petitioner.  These tests serve as a strong indicator of a student' mental proclivities and accurately predict retardation, attention deficits, anti-social behavior and overall ability to learn.  No expert in education was consulted or asked to interpret the scores available.  Since these tests are nationally given,

-34-

a local education expert would certainly have been available to discuss the interpretation of the scores.

4. Petitioner's formative years were spent in Selma, Alabama. No effort was made to talk with his teachers or the school officials to confirm the ongoing problems that he was experiencing. A wealth of information was available to be obtained from these individuals and telephone depositions could have been taken in order to preserve their testimony for the trial.

5. Another underlying theme in Petitioner's development was his addiction to drugs at a very early stage in his life. Although familiar in a very general sense with the effects of cocaine on an individual, an expert in this area could have provided a more thorough understanding of the impact of cocaine on this Petitioner.

6. While the trial was proceeding, Petitioner apparently had a Social Security claim wending its way through the system. A social security claim will by necessity require a variety of physical and mental examinations in order for the claimant to obtain benefits. Post conviction Petition Exh. B reflects that doctors and other trained personnel decided that Petitioner was disabled. Further, it reflected Social Security's understanding that his condition may not improve. It certainly would have been essential to the mitigation phase to provide this very valuable information to the jury.

7. Counsel for Petitioner failed to obtain psychiatric records for treatment that Petitioner had undergone as a child. Present counsel can only conjecture on what would be contained within these records, but surely the failure to obtain them is not justifiable.

8. Petitioner's family was not called to the stand to recount to the jury the problems that he had had while growing up. To argue that such testimony would have been cumulative shows a lack of understanding for the process of mitigation. Petitioner's mother was not called to the stand although she stood ready to appear. Testimony during the trial reflected the existence of a sister and a brother as well. None of these individuals were called to plead for Petitioner's life. Instead, counsel opted for a summary of interviews obtained by Dr. Chiappone and his assistant. This sterile and disjointed approach to mitigation gave the jury nothing to hold onto.

9. Dr. Chiappone's presentation was less than effective. On numerous occasions he had to be told to speak up so that the jurors

-35-

could hear his testimony. In addition, his testimony was extremely difficult to follow and his conclusions equally confusing.

10. The actions of Petitioner's counsel from beginning to the end of the mitigation phase constituted ineffective assistance. Even if we assume that Dr. Chiappone's diagnosis of Petitioner as borderline mentally retarded, with possible organic dysfunction in the brain, substance dependent, and an anti-social personality were accurate, trial counsel did little to effectively present this to the jury. Trial counsel should have investigated these issues with Petitioner's family members and friends to enable Dr. Chiappone to present his testimony in the best light possible. Similarly, Petitioner's mother should have been called and engaged in a lengthy conversation about her son's upbringing.

11. In addition, trial counsel gratuitously elicited information about Petitioner's dark side. Petitioner was revealed by his own witnesses to be abusive toward women, a bully who brutally imposed his will on those on the streets, a person who had difficulty controlling his anger, a person fascinated with guns, and finally someone who tortured and killed animals. Disclosure of these tendencies could only have frightened the jury and justified their verdict. By providing this type of information, trial counsel for Petitioner included non-statutory aggravating factors to be considered by the jury.

12. Dr. Chiappone also disclosed that Petitioner engaged in self-mutilation. People who self mutilate may possess suicidal ideation and some believe that it may be indicative of sexual abuse as a child. None of this was addressed other than in cursory fashion at the hearing and certainly it was not a factor in Dr. Chiappone's conclusions.

13. Without the necessary testimony and background from friends and family members, the jury could only look to Dr. Chiappone for such information. As a result, Dr. Chiappone was not effective and was successfully attacked by the prosecutor. In its written opinion sentencing Petitioner to death, the court was less than impressed with Dr. Chiappone's efforts. In one sentence the Court opines that while Petitioner's upbringing may not have been exemplary, it did not explain his later behavior in life.

14. Counsel was ineffective in the closing argument of the mitigation phase. The closing argument is what ever[y] good defense lawyer lives for. Defense counsel must evoke knowledge and facility with

-36-

the governing law and facts at issue.  Mitigating factors raised throughout the proceedings must be forcefully recapitulated.  A clear explanation of the statutory weighing process, with emphasis on the weight of evidence in mitigation must be made.

15.  During the course of his closing argument, defense counsel provided a disjointed and repetitive narrative.  Since the preparation and presentation of the mitigation lacked cohesion, the necessary experts and required volume of information, the closing argument could not hope to rise above the overall lack of effort and thought which went into it.

16.  The total effort and presentation of defense counsel during the mitigation phase was ineffective under *Strickland*.

## TWENTY-NINTH CAUSE OF ACTION

**Petitioner's death sentence is void or voidable because evidence which should have been presented to the jury was excluded due to the ineffectiveness of trial counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

1.  Counsels' lack of effort in the preparation of the mitigation phase of the trial excluded viable and effective information from being presented to the jury.

## THIRTY-FIRST CAUSE OF ACTION

**The judgment against Petitioner is void or voidable because his trial counsel was ineffective at the mitigation phase when he offered a closing argument which was disjointed, lacking in cohesion, and repetitively nonsensical in violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

1.  A review of the closing argument offered by trial counsel for Petitioner reveals a shocking lack of organization and understanding of the underlying statutory principles found in O.R.C. §2929.

2.  In closing, counsel continued with the same ill-fated strategy that was the impetus behind the mitigation effort as a whole.  He alluded to Dr. Chiappone's reference to the negative aspects of Petitioner's life.  In doing so he reminded the jury of the other horrible skeletons

in Petitioner's past. Reference to fascination with guns, torture of animals, and bullying of neighbors and girlfriends provided the jury with numerous non-statutory aggravating factors to include in the weighing process. The strategy provided impetus for the jury to vote for the death penalty.

## THIRTY-THIRD CAUSE OF ACTION

**The judgment against Petitioner is void or voidable because his counsel was ineffective in the mitigation phase of the trial because they failed to object to the trial court's improper instruction that any verdict that the jury was to reach must be unanimous, in violation of his rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

## FORTY-SEVENTH CAUSE OF ACTION

**Trial counsels' failure to obtain a mitigation specialist who could have assisted counsel in the preparation and presentation of the mitigation phase of Petitioner's trial, and could also have provided information which would have assisted Petitioner in other phases of the trial, deprived Petitioner of his Sixth, Eighth, and Fourteenth Amendment rights to effective assistance of counsel, due process, equal protection, and against cruel and unusual punishment.**

1. Petitioner was prejudiced by the failure to obtain a mitigation specialist for numerous reasons:

1) Petitioner's family background was never adequately investigated. If it had been, the information would have disclosed the dysfunctional nature of Petitioner's upbringing.

2) Other individuals stood prepared to testify on Petitioner's behalf at the mitigation hearing, yet they were never spoken with or called to testify.

3) Appropriate medical and factual histories were not provided to the only expert called by the defense in the mitigation hearing. Consequently, the witness was easily impeached.

4) Petitioner's tendency to use drugs was not adequately addressed

-38-

by trial counsel either in the pretrial motion stage, the trial or the mitigation hearing.

5) A mitigation specialist would have discovered that Petitioner may have an organic brain dysfunction which may explain the reason for his behavior.

6) A mitigation specialist would have suggested the use of various other experts to assist counsel in presenting evidence of learning disability, neurological impairment, and substance abuse.

7) If counsel had retained the services of a mitigation specialist he would have learned information which reveals considerable and significant data relevant to the issue of balancing the aggravating facts of the crime against the mitigating circumstances. This information could have been testified to at mitigation and could have provided a much more thorough understanding of Petitioner and the offense.

8) If a mitigation specialist had been used by defense counsel, there is a reasonable probability that the result of his trial would have been far different.

## FIFTIETH CAUSE OF ACTION

**Petitioner was deprived his right to effective assistance of counsel at the appellate stage of these proceedings in violation of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

1. Petitioner's appellate counsel neglected to challenge the improper instruction by the trial court that unanimity was necessary no matter what sentence the jury might arrive at.

2. Appellate counsel neglected to raise numerous meritorious claims on direct appeal or in the post-conviction process.

3. Since appellate counsel remained the same throughout the direct appeal and the post-conviction process, no *Murnahan* brief was filed suggesting that appellate counsel was ineffective. Such a remedy

may still need to be litigated in the state courts.[2]

4.  Appellate counsel evidently made no effort to prepare or complete a federal *habeas corpus* petition in a timely matter [sic], and would likely have missed the filing deadline if it had not been noticed by the staff of Judge Herman Weber.

5.  These failures by appellate counsel deprived Petitioner of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Procedural Default

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); see also, *Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982);  *Wainright*, 433 U.S. at 87.  *Wainright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

---

[2]  As noted above, subsequent to filing his present Petition, Mr. Carter litigated the Rule 26(B)/*Murnahan* issue in state court.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*.  *Murray v. Carrier*, 477 U.S. 478, 485, (1986); *Mapes v. Coyle,* 171 F. 3rd 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F. 3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

> As is well-established (although sometimes muddled by courts), two types of procedural barriers might preclude federal review of claims in a habeas petition. The first type, procedural default, is a judicially created rule, grounded in fealty to comity values and requiring federal courts to respect state court judgments that are based on an "independent and adequate" state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 732, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.
>
> The second type of bar, exhaustion, is similarly grounded in respect for state court procedures, but it is federally mandated by AEDPA, see 28 U.S.C. § 2254(b)(1)(A), (c), and requires petitioners to give state courts a "fair opportunity" to assess petitioners' claims. *O'Sullivan*, 526 U.S. at 844. Often, federal courts will rule that a petitioner's claim is "defaulted" because the petitioner failed to exhaust his remedies and the time for refiling an appeal in the state court has passed. The unexhausted claim is then classified as "procedurally defaulted" and deemed forfeited absent a showing of cause and prejudice. *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000). . . .
>
> But exhaustion and procedural default are distinguishable in an important sense. A defendant could fail to exhaust a claim without procedurally defaulting if he could return to the state courts to exhaust. Alternatively, as in this case, the defendant could fail to exhaust without defaulting if a clarification in procedural law indicates that he has already taken the necessary action to exhaust. That is, forfeiture by failure to exhaust entails a legal fiction, of sorts.

> The state court has not rejected an appeal based on a state rule violation; there is no declaration by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court would reject the appeal on independent and adequate state grounds if the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court would do, rather than respect for what a state court actually did.

*Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 186-187 (6th Cir., 2004).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord, Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d at 138.

The mere existence of a procedural bar is insufficient; the state courts must have relied on it. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  Whether the state courts' decision was based on a procedural bar is a legal question.  *Combs v. Coyle,* 205 F.3d 269, 275 (6th Cir.2000); *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000), citing *Couch v. Jabe,* 951 F. 2d 94, 96 (6th Cir. 1991)(per curiam).  *Harris v. Reed*, 489 U.S. 255 (1989) does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground.  *Scott v. Mitchell*, 209 F. 3d 854, 865 (6th Cir. 2000).

Determination of whether a state procedural ground is adequate and independent is a federal question that the federal court itself must decide.  *Henry v. Mississippi,* 379 U. S. 443, 447 (1965); *Abie State Bank v. Weaver,* 282 U.S. 765, 773 (1931).

State procedural rules bar federal habeas corpus review only if the rules are "firmly established and regularly followed."  *Rogers v. Howes,* 144 F. 3d 990 (6th Cir. 1998); *Jones v. Toombs,* 125 F. 3d 945, 946-47 (6th Cir. 1997); *James v. Kentucky*, 466 U.S. 341, 348-49 (1984); *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Barr v. City of Columbia*, 378 U.S. 146 (1964).  A procedural rule need not be followed in every case; it is sufficient if it is applied in the vast majority of cases.  *Byrd v. Collins,* 209 F. 3rd 486, 521 (6th Cir. 2000),  *cert. denied,* 531 U.S. 1082 (2001) citing *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989). "[A]n occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate."  *Coleman v. Mitchell*, 268 F. 3rd 417, 429 (6th Cir. 2001), quoting *Amos v. Scott*, 61 F. 3rd 333, 342 (5th Cir. 1995).

The Ohio criminal *res judicata* rule has been repeatedly upheld in the Sixth Circuit

as an adequate and independent state rule. *Mason v. Mitchell,* 320 F. 3d 604, 628 (6th Cir. 2003);

*Coleman,* 268 F. 3d at 429; *Buell v. Mitchell*, 274 F. 3d 337 (6th Cir. 2001); *Byrd,* 209 F.3d at 521-

22; *Rust,* 17 F. 3d  at 160-61; *Van Hook v. Anderson*, 127 F.Supp.2d 899 (S.D. Ohio 2001).

     With the exception of his Fiftieth Cause of Action, Mr. Carter's Causes of Action

which are now at issue with respect to whether they are procedurally defaulted involve his claims

of ineffective assistance of trial counsel.  *See* First, Second, Third, Ninth, Twenty-Eighth, Twenty-

Ninth, Thirty-First, Thirty-Third, and Forty-Seventh Causes of Action, *supra.*  Mr. Carter concedes

that his appellate counsel failed to present any of these claims on direct appeal.  *See* Doc. 124-1 at

13.  However, Mr. Carter argues that he has established "cause" for  procedurally defaulting these

claims.  Simply put, his position is that his appellate counsel, *see* Fiftieth Cause of Action, were

constitutionally ineffective for not raising these issues.  The Court therefore turns to Mr. Carter's

Fiftieth Cause of Action to determine whether he has procedurally defaulted that claim.

     As noted above, pursuant to Ohio App.R. 26(B) and *Murnahan*, Mr. Carter filed an

application to reopen his appeal in the Hamilton County Court of Appeals (First District) on June

9, 1999. That court denied Mr. Carter's application on October 21, 1999, on the bases that Mr.

Carter had failed to establish good cause for filing the application over five (5) years after

journalization of the court's judgment on direct  appeal.  As also noted above, Mr. Carter failed to

appeal that October 21, 1999, decision to the Ohio Supreme Court.

     As also noted above, on July 9, 2000, Mr. Carter requested that the court of appeals

appoint for him counsel to prepare and file a second Ohio App. R. 26(B)/*Murnahan* application,

which, on August 10, 2000, the court declined to do.  On September 28, 2000, Mr. Carter filed a

second application to reopen his initial appeal pursuant to Ohio App.R. 26(B)/*Murnahan*  in which

-44-

Mr. Carter raised the same grounds as he raised in his first application to reopen. The court of appeals denied Mr. Carter's motion to reopen his direct appeal on the basis that Ohio App.R. 26(B) "makes no provision for filing successive applications to reopen." Mr. Carter appealed the court of appeals' denial of his motion to reopen to the Ohio Supreme Court and the Ohio Supreme Court affirmed the appeals court. In doing so, the Ohio Supreme Court found that Mr. Carter's claims were barred by the doctrine of *res judicata* because Mr. Carter had not appealed the October, 1999, denial of his first application to reopen.

This Court need not address here whether Ohio App. R. 26(B) is an adequate and independent state ground for decision because, as noted by the Ohio Supreme Court, Mr. Carter failed to appeal the court of appeals' October 21, 1999, denial of his first application to reopen, thus allowing that judgment to become final. In affirming the denial of his second application to reopen, the Ohio Supreme Court relied, not on Ohio App.R. 26(B) or any of its standards, but rather on the doctrine of *res judicata*. As this Court has previously noted, the *res judicata* rule has been repeatedly upheld in the Sixth Circuit as an adequate and independent state ground. *Mason, supra*; *Coleman, supra*; *Buell, supra*; *Rust, supra*; *Van Hook, supra*. Accordingly, Mr. Carter's Fiftieth Cause of Action, which is his claim of ineffectiveness of appellate counsel, is procedurally defaulted.

Because Mr. Carter's claim of ineffectiveness of appellate counsel is procedurally defaulted, that claim cannot be a basis for finding "cause" for his admitted failure to raise before the Ohio courts his claims of ineffectiveness of trial counsel. Therefore, Mr. Carter's First, Second, Third, Ninth, Twenty-Eighth, Twenty-Ninth, Thirty-First, Thirty-Second, and Forty-Seventh Causes of Action are procedurally defaulted and this Court is barred from reviewing those claims.

**Remaining Causes of Action**

The following causes of action which Mr. Carter pleads in his Petition for Writ of

Habeas Corpus remain for this Court's consideration:

**TWENTY-FIFTH CAUSE OF ACTION**

**Petitioner's judgment and conviction are void or voidable for the reason that he was not afforded effective assistance of counsel during the trial of this matter in violation of his rights as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.**

1.  Counsel failed to obtain an expert in firearms who could have reconstructed the scenario behind the shooting of the victim.  An expert could have assisted trial counsel in establishing that the victim moved into the bullet's line of trajectory.  This would have unquestionably shown that Petitioner did not fire directly at Mrs. Messinger.  Such an issue would go directly to Petitioner's purpose in firing the shot that killed her.  Failure to follow this line of inquiry was ineffectiveness on the part of trial counsel.

2.  Counsel failed to move to consolidate Petitioner's indictment with that of the indictments pending against Kenny Hill and Virgil Sims. If the matters had been consolidated, the jury would have had an opportunity to fair [sic] compare the responsibility of the perpetrators.  The argument could have been presented that in fact Kenny Hill was the principal offender because he had obtained the gun and bullets.  Furthermore, since he was the first to arrive at the police station, he was able to negotiate a "sweetheart" deal which saved his life at the expense of Petitioner's.

3.  Counsel failed to interview a prime potential witness.  While separately indicted, the co-defendant Kenny Hill was available to be interviewed or called to testify at trial.  In a sworn affidavit, Hill swore to appellate counsel that he was neither contacted nor spoken to by Petitioner's trial counsel.  In his affidavit, Hill avers that had he been spoken with he would have told them that Petitioner was running out of the store with his back at least partially to the clerk while facing Hill as they fled.  Hill avers that Petitioner fired sideways with the gun in his left hand with his palm down.  His arm was not fully extended.  This is directly opposed to the State's version that he was facing Mrs. Messinger when Petitioner fired the

-46-

fatal shot.  Furthermore, it was Mr. Hill's observation that Petitioner did not purposefully fire the fatal shot and did not intend to shoot the clerk.

4.  While it is true that the affidavit provided by Mr. Hill is substantially different from the original statement he gave to the police upon his arrest, it would still be a question for the jury to determined which version of the killing was truthful.

5.  Counsel failed to mount an effort to demonstrate why a change of venue was called for in this matter.  Absolutely no effort was made by counsel to make the numerous newspaper articles that were written following this killing a part of the record.  Furthermore, only a cursory effort was made to inquire of the jurors their actual knowledge of this matter.

6.  Counsel failed to object to the instruction of "purposeful" used by the trial judge.  Counsel had every opportunity to submit an instruction on their own which would have comported with the law in Ohio.  Instead, they acceded to the trial court even though his instruction improperly combined two of the definitions found in OJI.

7.  All of these errors worked to the substantial prejudice of Petitioner and clearly demonstrate he was not afforded effective assistance of counsel during the trial phase of this case.

## TWENTY-SIXTH CAUSE OF ACTION

**The judgment and conviction against Petitioner are void or voidable because the trial court erred to the substantial prejudice of Petitioner by entering a conviction which is not supported by the manifest weight of the evidence.**

1.  There was insufficient evidence to show that Petitioner "purposefully" killed Frances Messinger.  Petitioner testified that the first shot fired was intended to frighten her.  He further testified that the second shot was also intended to frighten her.  Therefore, there was credible evidence that the shooting of Frances Messinger was indeed not a purposeful act, and hence the conviction was against the manifest weight of the evidence.

## TWENTY-SEVENTH CAUSE OF ACTION

**The judgment against Petitioner is void or voidable because the death sentence imposed in the Court's written opinion improperly reflects use of the "nature and circumstances" of the offense as an aggravating rather than mitigating factor, in violation of O.R.C. §2904.04(B), therefore, violating Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

## THIRTIETH CAUSE OF ACTION

**The judgment and conviction against Petitioner are void or voidable because the state's prosecutor during the mitigation phase closing argument, misapplied and mischaracterized some of the statutory mitigating factors raised by Petitioner's counsel, violating his rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.**

1. Although defense counsel specifically limited the evidence to five of the seven statutory mitigating factors, the prosecutor in closing argument misapplied and broadened one of the mitigating factors argued. By doing so, he created an aggravating factor to the prejudice of Petitioner.

2. In his closing argument, the state's prosecutor addressed the issue of Petitioner's lack of criminal history. In spite of the clear language of the statute that only criminal convictions or adjudications are admissible, he argued that criminal acts for which there had been no conviction were fair game for argument during this phase of the trial. He alluded to the alleged six (6) robberies that Petitioner had been involved in on the night of the killing. Counsel interposed an objection, but the Court felt that the state's prosecutor was simply commenting on the evidence.

3. As a result of the Prosecutor's comments, Petitioner's death sentence was imposed arbitrarily.

## THIRTY-SIXTH CAUSE OF ACTION

The judgment and conviction against Petitioner are void or voidable because of numerous errors which occurred during the guilt and mitigation phases of his trial, which were not harmless, but were pervasive and deprived Petitioner of a fair guilt and mitigation determination in violation of his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## FORTY-FIFTH CAUSE OF ACTION

The judgment and conviction against Petitioner are void or voidable because the evidence at Petitioner's mitigation hearing did not establish beyond a reasonable doubt that the aggravating circumstance outweighed mitigating factors beyond a reasonable doubt, making Petitioner's death sentence a violation of his rights to due process, equal protection, and against cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

## FORTY-SIXTH CAUSE OF ACTION

Petitioner's death sentence violates the Eighth (Cruel and Unusual Punishment Provision) and Fourteenth Amendments (Due Process and Equal Protection Clauses) because in conducting the proportionality review in Petitioner's case, the Ohio Supreme Court only compared Petitioner's case to other capital murder cases decided by that Court.

## FORTY-EIGHTH CAUSE OF ACTION

The Ohio State Courts have effectively converted Ohio's post conviction procedure into a meaningless ritual, rather than the statutorily mandated process for those convicted of a criminal offense to obtain redress for violations of their rights under the Ohio Constitution and the Constitution of the United States.  As a result, Petitioner's judgment and conviction are void or voidable under the Sixth, Eighth, and Fourteenth Amendments.

(Doc. 1).

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 25, 1996. *Herbert v. Billy,* 160 F.3d 1131, (6th Cir. 1998), *citing, Lindh v. Murphy,* 521 U.S. 320 (1997). Since Mr. Carter filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C. §2254 embodied in the AEDPA are applicable to his Petition.

> Title 28 U.S.C. §2254, as amended by the AEDPA, provides:
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254.

The AEDPA also provides that a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e).   In addition, pursuant to the AEDPA, before a writ may issue on a claim that was evaluated by the state courts, the federal court must declare that the state court's adjudication of a question of law or mixed question of law and fact was "contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court."  28 U.S.C. §2254(d)(1).

A state court's decision is contrary to the Supreme Court's clearly-established

precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law; or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407-08. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 529 U.S. 510 (2003); *Williams,* 529 U.S. at 407, 409. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint of the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412 (Justice O'Connor, concurring).

A state court decision is not "contrary to" Supreme Court law simply because it does not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3 (2002). Indeed, "contrary to" does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.* at 8. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts

incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded Section 2244(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 366.

**Merits**

## TWENTY-FIFTH CAUSE OF ACTION

**Petitioner's judgment and conviction are void or voidable for the reason that he was not afforded effective assistance of counsel during the trial of this matter in violation of his rights as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.**

1.  Counsel failed to obtain an expert in firearms who could have reconstructed the scenario behind the shooting of the victim. An expert could have assisted trial counsel in establishing that the victim moved into the bullet's line of trajectory. This would have unquestionably shown that Petitioner did not fire directly at Mrs. Messinger. Such an issue would go directly to Petitioner's purpose in firing the shot that killed her. Failure to follow this line of inquiry was ineffectiveness on the part of trial counsel.

2.  Counsel failed to move to consolidate Petitioner's indictment with that of the indictments pending against Kenny Hill and Virgil Sims. If the matters had been consolidated, the jury would have had an opportunity to fair [sic] compare the responsibility of the perpetrators. The argument could have been presented that in fact Kenny Hill was the principal offender because he had obtained the gun and bullets. Furthermore, since he was the first to arrive at the police station, he was able to negotiate a "sweetheart" deal which saved his life at the expense of Petitioner's.

3.  Counsel failed to interview a prime potential witness. While separately indicted, the co-defendant Kenny Hill was available to be interviewed or called to testify at trial. In a sworn affidavit, Hill

swore to appellate counsel that he was neither contacted nor spoken to by Petitioner's trial counsel.  In his affidavit, Hill avers that had he been spoken with he would have told them that Petitioner was running out of the store with his back at least partially to the clerk while facing Hill as they fled.   Hill avers that Petitioner fired sideways with the gun in his left hand with his palm down.  His arm was not fully extended.  This is directly opposed to the State's version that he was facing Mrs. Messinger when Petitioner fired the fatal shot.  Furthermore, it was Mr. Hill's observation that Petitioner did not purposefully fire the fatal shot and did not intend to shoot the clerk.

4.   While it is true that the affidavit provided by Mr. Hill is substantially different from the original statement he gave to the police upon his arrest, it would still be a question for the jury to determined which version of the killing was truthful.

5. Counsel failed to mount an effort to demonstrate why a change of venue was called for in this matter.  Absolutely no effort was made by counsel to make the numerous newspaper articles that were written following this killing a part of the record.  Furthermore, only a cursory effort was made to inquire of the jurors their actual knowledge of this matter.

6. Counsel failed to object to the instruction of "purposeful" used by the trial judge.   Counsel had every opportunity to submit an instruction on their own which would have comported with the law in Ohio.  Instead, they acceded to the trial court even though his instruction improperly combined two of the definitions found in OJI.

7. All of these errors worked to the substantial prejudice of Petitioner and clearly demonstrate he was not afforded effective assistance of counsel during the trial phase of this case.

**Procedural default**

Mr. Carter has not previously raised his ineffective assistance of trial counsel claims contained in subclaims (5) and (6).  Therefore, based on the same authority and for the same reasons this Court gave in determining that  Mr. Carter's  First, Second, Third, Ninth, Twenty-Eighth, Twenty-Ninth, Thirty-First, Thirty-Second, and Forty-Seventh Causes of Action are procedurally

defaulted, see *supra*, Mr. Carter's subclaims (5) and (6) in his Twenty-Fifth Cause of Action are

procedurally defaulted.    However, his remaining subclaims remain viable for this Court's

consideration.

**State court opinion**

In addressing Mr. Carter's remaining claims of ineffective assistance of counsel, the

Ohio Supreme Court said:

> *Ineffective Assistance of Counsel*
>
> The standard by which we review claims of ineffective assistance of counsel is well established.  Pursuant to *Strickland v. Washington* (1984), 466 U.S. 668 ... , in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, *i.e.,* errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial would have been different. Accord *State v. Brandle* (1989), 42 Ohio St.3d 136 ...; *State v. Combs, supra.*  Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel.  To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  *Strickland,* at 689, ...; *State v. Wickline,* (1990), 50 Ohio St.3d 114**,** 126 ... .  Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of a trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel.  *Lockhart v. Fretwell* (1993), 506 U.S. 364 ....
>
> Carter claims that ineffective assistance of his trial counsel is demonstrated by (1) counsel's failure to file a Crim.R. 13 motion to consolidate his trial with that of Hill and Sims, and to subpoena Hill to testify; (2) counsel's failure to obtain a firearms expert to provide testimony reinforcing Carter's contention that he lacked intent to kill; (3) counsel's presentation of a clinical psychologist during the mitigation hearing whose testimony was mixed in nature and included recitation of facts prejudicial to Carter; and (4) counsel's failure to call Carter's mother to testify during the mitigation hearing. None of those alleged deficiencies rises to the level of prejudicial

deficient performance, nor otherwise meets the ineffective assistance of counsel criteria set forth above.

*Carter,* 72 Ohio St.3d at 558.

### **Clearly established federal law**

The governing standard for effective assistance of counsel is found in *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that the counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

With respect to the first prong of the *Strickland* test, the Supreme Court has

commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.

As to the second prong, the Supreme Court said:

-55-

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id.* at 694; see also, *Darden v. Wainright,* 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319

(6th Cir. 1998).

In *Wiggins v. Smith,* 539 U.S. 510 (2003), the Court recognized that the American

Bar Association's (ABA) Guidelines for the Appointment and Performance of Counsel in Death

Penalty Cases provide the guiding rules and standards to be used in defining the prevailing

professional norms for purposes of ineffective assistance of counsel claims. The 1989 Guidelines

adopted as "prevailing norms" in *Wiggins* merely represent

> ...[A] codification of longstanding, common-sense principles of representation understood by diligent, competent counsel in death penalty cases. The ABA standards are not aspirational in the sense that they represent norms newly discovered after *Strickland*. They are the same type of longstanding norms referred to in *Strickland* in 1984 as "prevailing professional norms" as "guided" by "American Bar Association standards and the like." ... The Court in *Wiggins* clearly holds ... that it is not making "new law" on the ineffective assistance of counsel either in *Wiggins* or in the earlier case on which it relied for its standards, *Williams v. Taylor*, 529 U.S. 362 ... (2000).

*Hamblin v. Mitchell,* 354 F.3d 482, 486 (6th Cir. 2003), *cert. denied,* 543 U.S. 925 (2004).

### Analysis

Mr. Carter's argument with respect to subclaim (1) seems to be that if counsel had

engaged the services of a firearms expert such an expert could have supported his claim that he did

not fire directly at Ms. Messinger, thereby establishing that he did not purposefully shoot her.

However, Mr. Carter offers nothing to substantiate his claim.[3] In addition, as noted in this Court's

---

[3] As an aside, the Court notes that Mr. Carter never raised this claim in his state post-conviction proceedings.

discussion of Mr. Carter's Twenty-Sixth Cause of Action which addresses a "sufficiency of the evidence" claim, see, *infra*, in addition to the forensic evidence, the evidence adduced at trial included the eyewitness testimony of Carol Blum. Even assuming that Mr. Carter's counsel introduced the testimony of a firearms expert, it is, at best, speculative, that such testimony would have resulted in a different outcome particularly in the face of the above-referenced evidence.

In subclaim (2), Mr. Carter argues that counsel were ineffective for failing to move to consolidate his indictment with that of the indictments pending against Kenny Hill and Virgil Sims because if the matters had been consolidated, the jury would have had an opportunity to fairly compare the responsibility of the perpetrators, it could have been shown that Kenny Hill was the principal offender because he had obtained the gun and bullets, and that since Kenny Hill was the first to arrive at the police station, he was able to negotiate a "sweetheart" deal which saved his life at the expense of Mr. Carter's.

Prior to trial, the State provided Mr. Carter's counsel with a copy of the statement which Mr. Hill gave to the police on April 7, 1992. Return of Writ, Ex. N thereto. In that statement, Mr. Hill gave a description of the events of April 6, 1996, which was different than the description that Mr. Carter gave. For example, Mr. Hill said that days prior to the incident, Mr. Carter asked him if he had a gun and requested him to get bullets for the gun. In addition, Mr. Hill said that Mr. Carter asked him (Mr. Hill) to give him (Mr. Carter) the loaded gun when they were in the UDF. Finally, Mr. Hill said that he saw Mr. Carter shoot Ms. Messinger in the face and that Mr. Carter told his companions that he "shot the bitch".

Being faced with the possibility of such damaging testimony from Mr. Hill, this Court cannot say that Mr. Carter's counsel were deficient for not seeking to have Mr. Carter's indictment

consolidated with Mr. Hill's and Virgil Sims' indictments. Additionally, the Court would find it difficult to conclude that there is a reasonable probability that the result of Mr. Carter's trial would have been different if Mr. Hill testified before the same jury which tried Mr. Carter.

In his subclaim (3), Mr. Carter argues that counsel were constitutionally ineffective for failing to interview or call Mr. Hill as a witness. However, for the same reasons given with respect to Mr. Carter's subclaim (2), *supra*, this subclaim fails as well.

Mr. Carter argues in support of his subclaim (4) that while it is true that Mr. Carter's subsequent affidavit which Mr. Hill provided to Mr. Carter's appellate counsel is "substantially different from the original statement he gave to the police upon his arrest", it would be a question for the jury to determine which version of the killing was truthful. Again, however, for the reasons given with respect to Mr. Carter's subclaim (2), Mr. Carter's subclaim (4) fails as well.

This Court concludes that Mr. Carter's subclaims (5) and (6) in his Twenty-Fifth Cause of Action are procedurally defaulted. In addition, the Ohio Supreme Court's decision on Mr. Carter's remaining ineffective assistance of counsel claim is not contrary to or an unreasonable application of clearly established federal law. Mr. Carter's subclaims (1), (2), (3), and (4) in his Twenty-Fifth Cause of Action should be rejected.

## <u>TWENTY-SIXTH CAUSE OF ACTION</u>

**The judgment and conviction against Petitioner are void or voidable because the trial court erred to the substantial prejudice of Petitioner by entering a conviction which is not supported by the manifest weight of the evidence.**

1.    There was insufficient evidence to show that Petitioner "purposefully" killed Frances Messinger. Petitioner testified that the first shot fired was intended to frighten her. He further testified that the second shot was also intended to frighten her. Therefore, there was credible evidence that the shooting of Frances Messinger was

indeed not a purposeful act, and hence the conviction was against the manifest weight of the evidence.

If read literally, the Twenty-Sixth Cause of Action would not state a claim for federal habeas corpus relief because the United States Constitution does not prohibit a conviction which is against the manifest weight of the evidence. Essentially, however, Mr. Carter argues that the evidence was legally insufficient to sustain his conviction which does state a federal constitutional claim. *Jackson v. Virginia,* 443 U.S. 307 (1979).

**State court opinion**

In rejecting Mr. Carter's sufficiency of the evidence claim, the Ohio Supreme Court said:

*Sufficiency of the Evidence*

The crime of aggravated felony murder requires proof that the accused "purposely cause[d] the death of another." R.C. 2903.01(B). In addition, the defendant must be "specifically found to have intended to cause the death of another." R.C. 2903.01(D).

Carter essentially argues that the state's evidence was insufficient to satisfy these two statutory elements of the crime of aggravated murder and that the trial court erred in denying his Crim.R. 29 motion for acquittal. We disagree. In analyzing issues of sufficiency of evidence, a reviewing court must view the evidence "in the light most favorable to the prosecution," and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia,* (1979), 443 U.S. 307, 319 ...; *State v. Jenks* (1991), 61 Ohio St.3d 259, ..., (paragraph two of the syllabus).

In this case, the defendant testified that he shot "to scare" Messinger, that he was unfamiliar with guns, and that he never intended to shoot Messinger. The jury was under no obligation to accept this testimony as truthful. See, *e.g., State v. Jackson* (1991), 57 Ohio St.3d 29, 34 .... The jury could quite easily and reasonably have found purpose to kill beyond a reasonable doubt despite this testimony. A person is presumed to intend the natural, reasonable and probable

consequences of his voluntary acts, *State v. Seiber* (1990), 56 Ohio St.3d 4, 13, ...; *State v. Thomas* (1988), 40 Ohio St.3d 213, 217 ..., and intent can be determined from the surrounding facts and circumstances, see *State v. Johnson* (1978), 56 Ohio St.2d 35, 38 ...; *State v. Robinson* (1954), 161 Ohio St.213 ..., paragraph five of the syllabus. Based on the eyewitness testimony of Carol Blum, the jury could have concluded that Messinger was shot before the robbers turned to flee, at a point in time when the gun held by Carter was in close proximity to the victim. The jury had before it additional evidence that Messinger was killed by a bullet which entered the middle of her forehead. It was undisputed that the gun used in the robbery required to shooter to separately cock the hammer each time before refiring, justifying the conclusion that Carter intentionally prepared his gun to fire a second time after first firing into the cigarette cabinet behind the cash register. Sufficient evidence existed to support the finding that Carter possessed purpose to cause Messinger's death as contemplated by R.C. 2903.01(B) and (D). The offense of aggravated robbery, when committed with a loaded gun, is "likely to produce death." *State v. Widner* (1982), 69 Ohio St.2d 267, 270 ...; *State v. Clark* (1978), 55 Ohio St.2d 257 ... .

Carter's contentions that his convictions were not based on sufficient evidence and that a motion to acquit should have been granted at the close of the state's case have no merit.

*Carter,* 72 Ohio St.3d at 553-54.

### <u>Clearly established federal law</u>

In *Jackson v. Virginia,* 443 U.S. 306 (1979), the Supreme Court discussed the standard applicable to a federal court's review of a state conviction on a sufficiency-of-the-evidence claim in some detail. The Court stated:

In [*In re*] *Winship,* [397 U.S. 358, 364 (1970)] the Court held for the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." ... The standard of proof beyond a reasonable doubt, said the Court, "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual

-60-

error in a criminal proceeding. 397 U.S. at 363.... At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Id.* at 372 ... (Harlan, J., concurring).

...

The *Winship* doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt", at a minimum is one based on "reason". Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. Under *Winship*..., it follow that when such a conviction occurs in a state trial, it cannot constitutionally stand.

A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court.

...

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether, *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

-61-

*Jackson,* 443 U.S. at 315-19 (citations and footnotes omitted)(emphasis in original).

Under the standard announced in *Jackson*, therefore, it is not the reviewing court's duty to rule out every hypothesis that might be conjured from the facts other than the petitioner's guilt. *Jackson,* 443 U.S. at 326. Instead, where the evidence supports conflicting inferences, the court must presume the fact finder resolved such conflicts against the petitioner and must defer to that resolution. *Id.* Moreover, circumstantial evidence may be sufficient to support a conviction. *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984). Finally, it is well established that the trier of fact at the state court level bears primary responsibility to choose which testimony or evidence to believe, and that a credibility determination by a state court is entitled to a presumption of correctness so long as the determination is fairly supported by the record. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied sub nom Marshall v. Walker*, 464 U.S. 951 (1983); *Scott v. Perini,* 662 F.2d 428, 435 (6th Cir. 1981).

**Analysis**

Mr. Carter argues that there was credible evidence that the shooting of Ms. Messinger was not a purposeful act and therefore his conviction was against the manifest weight of the evidence. In support of that argument, Mr. Carter points to his trial testimony that both shots he fired were for the purpose of frightening Ms. Messinger**.** Mr. Carter's position is that in light of that evidence, the state failed to establish the "purposely" element of Ohio Revised Code §2903.01(B).[4]

It is true that Mr. Carter testified at his trial that he fired the two gun shots for the purpose of frightening Ms. Messinger. Transcript of Proceedings, Jury Trial, Vol. V at 940; 946-47;

---

[4] Ohio Revised Code § 2903.01(B) reads in part that "no person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit ... robbery."

-62-

981.  However, Mr. Carter has ignored other evidence which the jury could find to be credible that the shooting of Ms. Messinger was a purposeful act.

At the time of the shooting, Carol Blum was a waitress working at the Chili Company which was located across the street from the UDF store where Ms. Messinger was working.  *Id.,* Vol. IV at 672.  Ms. Blum testified that she looked across the street to the UDF and saw a man behind the counter and another man in front of the counter with his hands extended as though he was holding something.  *Id.* at 673.  Ms. Blum also testified that the man behind the counter bent down and then about 30 seconds the two man ran out of the UDF.  *Id.*  Ms. Blum testified further that during the time she observed what was happening in the UDF, she never saw the UDF clerk whom she knew from going into the store.  *Id.* at 677.

Dr. Charles Stephens, the forensic pathologist who performed the post-mortem examination of Ms. Messinger, testified that the cause of Ms. Messinger's death was a gunshot wound to her head.  *Id.*, Vol. V at 859.  Dr. Stephens testified that the bullet entered Ms. Messinger's forehead slightly to the left of midline and on a slight upward angle.  *Id.* at 858.

William Schrand, a coroner's examiner with the Hamilton County Coroner's Laboratory testified that the firearm used to shoot Ms. Messinger was a Smith and Wesson top break, 5-shot revolver that was changed for a 30 Smith and Wesson cartridge.  *Id.*, Vol. IV at 832, 835.  Mr. Schrand also testified that to fire the gun, at some point, the cylinder would be loaded with cartridges and closed, that next, in preparation for firing, the hammer would be cocked and, finally, the spur trigger pulled to fire the weapon.  *Id.* at 836.  Mr. Schrand testified further that the gun at issue was produced between 1877 and 1891 and that it was a single-action revolver meaning that for each shot, one must cock the hammer which rotates the cylinder and brings a new cartridge

-63-

around the barrel and then pull the trigger. *Id.* Mr. Schrand explained that in contrast, when one pulls on the trigger on a double-action revolver, it both cocks, rotates the cylinder, and releases and fires the weapon. *Id.* at 836-37.

Although Mr. Carter testified that he fired the two gunshots for the purpose of simply frightening Ms. Messinger, the jury, of course, was under no obligation to accept Mr. Carter's testimony as truthful. In addition, the other evidence introduced by the state supports the state's position that Mr. Carter purposely killed Ms. Messinger. First, Ms. Blum's testimony provided a basis for the jury to conclude that, in contrast to Mr. Carter's argument, Ms. Messinger was shot *before* Mr. Carter and Mr. Hill turned to flee from the UDF. In addition, the coroner's uncontradicted testimony established that the cause of Ms. Messinger's death was a gunshot wound to the head and that the bullet entered her forehead just slightly left of center. The jury could conclude that the precision of the entry wound indicated that the shooter purposely intended to kill Ms. Messinger. Finally, the uncontradicted forensic evidence also established that the gun used in the killing was an old, single-action firearm which required the shooter to separately cock the hammer each time the shooter wanted to fire. Based on that evidence, the jury could make a finding that Mr. Carter intentionally prepared the gun to fire each time he fired it.

In viewing the evidence, much of it uncontradicted, in the light most favorable to the state, a rational fact-finder could conclude that the state established the "purposely" element of Ohio Revised Code § 2903.01(B). The Ohio Supreme Court's decision on this issue is not contrary to or an unreasonable application of clearly established federal law. Mr. Carter's Twenty-Sixth Cause of Action should be rejected.

## TWENTY-SEVENTH CAUSE OF ACTION

**The judgment against Petitioner is void or voidable because the death sentence imposed in the Court's written opinion improperly reflects use of the "nature and circumstances" of the offense as an aggravating rather than mitigating factor, in violation of O.R.C. §2904.04(B), therefore, violating Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

In support of this Cause of Action, Mr. Carter argues that the trial court erroneously considered the "nature and circumstances" of the offense as an aggravating circumstance.

**State court opinion**

Mr. Carter raised this claim as Proposition of Law No. XXIII in his appeal to the Ohio Supreme Court. That court, however, rejected Mr. Carter's claim without comment. *See Carter,* 72 Ohio St.3d at 970. Mr. Carter also raised the claim on direct appeal to the Hamilton County Court of Appeals as Assignment of Error No. XXII. In rejecting Mr. Carter's claim, the court of appeals said:

> In his twenty-second assignment of error, Carter alleges that the trial court erred when its decision to impose the death penalty was based upon the nature and circumstances of the offense, a nonstatutory aggravating factor, insufficient consideration of valid mitigating factors, and conversion of the nonexistence of some statutory mitigating factors into nonstatutory aggravating circumstances. In support of this assignment, Carter contends that where the nature and circumstances of the offense are mitigating in nature, an accused is entitled to their inclusion in the weighing process; but, where the nature and circumstances of the offense are not mitigating, or are so horrible that they cannot be considered as mitigating, an accused is entitled to have them excluded from the weighing process entirely. This assignment is overruled.
>
> R.C. 2929.04(B) provides that the "court * * * shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender," and each of the

-65-

seven mitigating factors.  The trial court, when it imposes a sentence of death, is required to state in a separate opinion its specific findings "as to the existence of any of the mitigating factors * * *, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors." R.C. 2929.03(F).  In construing R.C. 2929.03(F), the Ohio Supreme Court stated in *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus, that a trial court "may rely upon and cite the nature and circumstances of the offense as reasons supporting its findings that the aggravating circumstances were sufficient to outweigh the mitigating factors." See, also, *State v. Cook* (1992), 65 Ohio St.3d 516, 605 N.E.2d 70; *State v. Rojas* (1992), 64 Ohio St.3d 131, 592 N.E.2d 1376.

In the instant case, the trial court, in its sentencing considered as an aggravating circumstance the undisputed evidence that the aggravated murder was committed while Carter was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of aggravated robbery, and that Carter was the principal offender in the commission of the aggravated murder, or if not the principal offender, that he committed the aggravated murder with prior calculation and design.  The trial court reviewed the relevant mitigating factors, which, in its view, were not present in this case, and the nature and circumstances of the offense, and concluded that the aggravating circumstances outweighed all the mitigating factors advanced by Carter beyond a reasonable doubt. We find no error in the manner in which the trial court fulfilled its duties under R.C. 2929.03(F) and we reject the assertion that it gave undue or improper consideration to the nature and circumstances of the offense or to any other mitigating or nonstatutory factor. Carter's twenty-second assignment of error is, therefore, overruled.

*State v. Carter,* 1993 WL 512859 at *12-13; *see also,* Return of Writ, Ex. F attached thereto.

### **Clearly established federal law**

The constitutional prohibition on arbitrary and capricious capital sentencing determination is not violated by a capital sentencing scheme that permits the jury to exercise unbridled discretion in determining whether the death penalty should be imposed after it has found

that the defendant is a member of the class made eligible for that penalty by statute. *California v. Ramos*, 463 U.S. 992 (1993). Statutory aggravating circumstances play a constitutionally necessary function by circumscribing the class of persons eligible for the death penalty. *Zant v. Stephens,* 462 U.S. 862 (1983). The Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. *Id.*

The states enjoy wide freedom to structure and shape the parameters of the consideration of mitigating evidence. *Boyde v. California,* 494 U.S. 370, 376 (1990); see also, *Walton v. Arizona,* 497 U.S. 636 (1990).

In *Lowenfield v. Phelps,* 484 U.S. 231 (1988), the United States Supreme Court reaffirmed the proposition that a state's capital sentencing scheme must genuinely narrow the class of individuals eligible for the death penalty as compared to those found guilty of an underlying capital offense. Additionally, the *Lowenfield* Court determined that "aggravating factors" may be contained in the definition of the crime or in a separate sentencing factor or both. *Lowenfield,* 462 U.S. at 244-46; *see also, Tuilaepa v. California,* 512 U.S. 967, 971-72 (1994)(a trier of fact may sentence a defendant to death after finding an aggravating circumstance at either the guilt or the penalty phase).

**Analysis**

In *Smith v. Mitchell,* 348 F.3d 177 (6th Cir. 2003), the petitioner made the same argument which Mr. Carter makes here; that is, Mr. Smith argued that the trial court erred by including nonstatutory aggravating factors in the sentencing decision. Specifically, Mr. Smith contended that the trial court used the nature and circumstances of the offense as a nonstatutory

aggravating circumstance although the Ohio statute requires the nature and circumstances be considered as mitigating factors.   The Sixth Circuit determined:

> Smith's argument lacks merit because the panel's opinion listed only the nature and circumstances of the offense as a possible, but not relevant, mitigating factor. Their opinion did not list any nonstatutory aggravating circumstances. Their reference to the nature and circumstances of the offense was proper, since "[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf*, (1987) ... 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.

*Smith,* 348 F.3d at 209-10.

Similarly, in the present case, the trial court did not list any nonstatutory aggravating circumstances. *See* Return of Writ, Ex. B thereto at 7-9.  Additionally, the court specifically listed the nature and circumstances of the offense as a possible mitigating factor. *Id*. at 11.

As the Sixth Circuit held in *Smith,* to the extent that Mr. Carter states a constitutional claim cognizable on habeas, it is foreclosed by well established Supreme Court precedent.  See *Smith,* 348 F.3d at 219 (citation omitted).

Mr. Carter's Twenty-Seventh Cause of Action should be denied.

## THIRTIETH CAUSE OF ACTION

**The judgment and conviction against Petitioner are void or voidable because the state's prosecutor during the mitigation phase closing argument, misapplied and mischaracterized some of the statutory mitigating factors raised by Petitioner's counsel, violating his rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.**

1. Although defense counsel specifically limited the evidence to five of the seven statutory mitigating factors, the prosecutor in closing argument misapplied and broadened one of the mitigating factors

argued.  By doing so, he created an aggravating factor to the prejudice of Petitioner.

2.  In his closing argument, the state's prosecutor addressed the issue of Petitioner's lack of criminal history.  In spite of the clear language of the statute that only criminal convictions or adjudications are admissible, he argued that criminal acts for which there had been no conviction were fair game for argument during this phase of the trial.  He alluded to the alleged six (6) robberies that Petitioner had been involved in on the night of the killing.  Counsel interposed an objection, but the Court felt that the state's prosecutor was simply commenting on the evidence.

3.  As a result of the Prosecutor's comments, Petitioner's death sentence was imposed arbitrarily.

**State court opinion**

In addressing Mr. Carter's prosecutorial misconduct claim, the Ohio Supreme Court

said:

*Prosecutorial Misconduct*

The conduct of a prosecuting attorney during trial does not constitute a ground of error unless the conduct deprives the defendant of a fair trial.  *State v. Apanovitch* (1987) 33 Ohio St.3d 19, 24 ...; *State v. Keenan* (1993), 66 Ohio St.3d 402 ... .  A prosecutor is not precluded from referring to the nature and circumstances surrounding a capital offense to explain when the specified aggravating circumstance or circumstances outweigh any mitigating factors.  *State v. Combs* (1991), 62 Ohio St.278, 283 ... ; *State v. Stumpf* (1987), 32 Ohio St.3d 95 ..., paragraph one of the syllabus; *State v. Lott* (1990), 51 Ohio St.3d 160, 171 ... .  In this case Carter correctly points out that the prosecutor  in the heat of argument misstated certain aspects of the law ( *e.g.,* "You already know what aggravating circumstances are. *** *They are everything that surrounds the facts of this particular case."* [Emphasis added].)   No objection was made to these comments.  While defense counsel did object when the prosecutor stated, "There is no dispute as to [Carter's] convictions. *But criminal history deals with a lot of suspicious conduct"* (emphasis added), we note that the trial court adequately instructed the jury as to both the definitions of "aggravating circumstances" and mitigating factors as well as the process by which the jury was to weigh the aggravating circumstance against the mitigating factors.  We have reviewed the

record and find that, when read as a whole, it supports the conclusion that defendant was fairly tried.  The conduct of the prosecutor in this case, although worthy of criticism, does not rise to the level of reversible error.

*Carter,* 72 Ohio St.3d at 557.

### Clearly established federal law

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F. 2d 117 (6th Cir. 1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). To decide this question, the court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F. 3d 777, 783 (6th Cir. 2001).  A four-factor test is then applicable to any conduct the Court finds inappropriate:  (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2)  whether they are isolated or extensive; (3)  whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.  *Id.*; see also, *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355-56 (6th Cir. 1993), *citing,  Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).  The misconduct must be so gross as probably to prejudice the defendant.  *Prichett v.*

-70-

*Pitcher*, 117 F. 3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997); *United States v. Ashworth,* 836 F. 2d 260, 267 (6th Cir. 1988). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In addition, an examination of alleged prosecutorial misconduct is performed in the context of the trial as a whole. *United States v. Beverly,* 369 F.3d 516, 543 (6th Cir.), *cert. denied,* 543 U.S. 910 (2004), citing *United States v. Young,* 470 U.S. 1, 12 (1985) and *United States v. Francis*, 170 F.3d 546, 553 (6th Cir. 1999).

> In determining whether prosecutorial misconduct mandates habeas relief, we apply the harmless error standard. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993).

*Bates v. Bell*, 402 F. 3d 635 (6th Cir., 2005).

The Sixth Circuit has described the relevant inquiry in claims of penalty phase prosecutorial misconduct claims:

> In the context of a death penalty sentencing hearing ... the question of error or effect is more complex than in traditional trials. Rather than determining whether a constitutional error would have pushed a jury from a "not guilty" verdict to a "guilty" verdict, we must attempt to discover whether the constitutional error influenced the jury's decision between life and death.

*Bates v. Bell,* 402 F.3d 635 (6th Cir.), *cert. denied,* ___ U.S. ___, 126 S.Ct. 163 (2005).

### Analysis

In her closing argument during the penalty phase, one of the assistant prosecutors said:

> The defendant lacks the significant history of prior criminal convictions. It is true he does not have much of a record. Yet it is also true, and you heard both from the defense case and from the

> State's witnesses, that the very night the defendant was out robbing others and that was against the law.

Transcript of Proceedings, Jury Trial, Vol. VII at 1243.  Mr. Carter's counsel failed to object to that comment.

> During his closing argument, Mr. Carter's counsel stated:
>
> ...
> As the prosecutors have pointed out, he has gotten in trouble with fights and this and that, selling fake cocaine which is against the law. He was involved at least in the car while the drug dealers were being robbed by Kenny Hill.
>
> His adult record and his convictions are disorderly conduct and resisting arrest, both at the same time.  And that is his record. That is his criminal record. To the best of our knowledge and what we have been provided by the prosecutors, is that he has not juvenile delinquency record and he has two adult convictions and that is it.
>
> And you could always say well, maybe he did this or he should have been arrested for that, but in the instructions it says you should consider his lack of convictions, and lack of a record and we are asking you to do that.
> ...

*Id.* at 1261-62.

> In response to Mr. Carter's counsel's closing argument, another assistant prosecutor argued to the jury:
>
> ...
> Lack of criminal history.  What does that mean?  There is no dispute as to his convictions.  But criminal history deals with a lot of suspicious conduct.  And you heard what his conduct was.  In one short window of time, in less than 24 hours this man was involved in six robberies–
> ...

*Id.* at 1283.

> At that point, Mr. Carter's counsel objected and requested a side bar conference at

which the following exchange took place:

> [DEFENSE COUNSEL]: Your Honor, I am reading off the mitigating factors and the jury charge and the sentence is very concise and complete.  Offenders lack of significant history of prior criminal convictions and adjudications.  It talks nothing about a history of crime or potential convictions.

> COURT: He's talking about the evidence.  Isn't that what he is talking about?

> [DEFENSE COUNSEL]: Your Honor, I object to him putting a comma after the word significant history because it's significant history of prior criminal convictions.  That is the –

> [PROSECUTOR]: It is part of his background and history.

> COURT: He's talking about the evidence.

> [DEFENSE COUNSEL]: That is fine.  They want to put that in – that is [the Prosecutor's] position.  But it is objectionable.

> COURT: We are instructing what they say in argument is not testimony and it's not the law.  So I think that is fine.

> [DEFENSE COUNSEL]: Thank you.

*Id.* at 1283-84.

> The court subsequently instructed the jury as follows:

> ...[W]hat is and what is not evidence in this particular proceeding? ...

> ...[T]he opening statements of the attorneys and closing arguments which you have just heard are not evidence.  The opening statements and the closing arguments by the attorneys are designed to assist you, but they are not evidence. ...

> What are the mitigating factors?  The statute provides certain mitigating factors.  Mitigating factors are factors that, while they do not justify or excuse the crime of Aggravated Murder, nevertheless, may be considered by you as extenuating, lessening, weakening, excusing to some extent, or reducing the degree of the defendant's

blame.

The relevant statutory mitigating factors include, but are not limited
to:
...
(4) The offender's lack of significant history of prior criminal
convictions and delinquency adjudications;
...

*Id.* at 1295-96; 1300-01.

Applying the *Serra* factors to this case, this Court concludes that while the assistant

prosecutor may have made improper comments on the mitigating factor of "lack of significant

history of prior criminal convictions and delinquency adjudications", those improper comments, did

not so infect the process as to rise to the level of a Constitutional violation by denying Mr. Carter

due process or a fair trial.

It appears, first of all, that the reference to other misconduct — involvement in the

robberies of drug dealers just before the killing — are universally recognized as prejudicial.  Dean

Wigmore writes on evidence of other crimes:

> It may almost be said that it is because of the
> indubitable relevancy of specific bad acts showing the
> character of the accused that such evidence is
> excluded.  It is objectionable not because it has no
> appreciable probative value but because it has too
> much.  The natural and inevitable tendency of the
> tribunal — whether judge or jury — is to give
> excessive weight to the vicious record of crimes thus
> exhibited and either to allow it to bear too strongly on
> the present charge or to take the proof of it as
> justifying a condemnation, irrespective of the
> accused's guilt of the present charge.

1A Wigmore, Evidence §58.2 (Tillers rev. 1983).  If *actual* evidence of other crimes, established

by convictions, is thus prejudicial, certainly a prosecutor's reference to criminal conduct without

proving any conviction can be considered prejudicial.

-74-

However, the prosecutor's complained-of comments were isolated. This is borne out by the fact that closing arguments span the space of 54 transcript pages and the prosecutor's comments at issue are just seven transcript lines in length[5]. This Court has not located, nor has Mr. Carter pointed to, any additional objectionable comments during the penalty phase closing arguments.

The third *Serra* factor is somewhat problematic for a *habeas* court to resolve. It is difficult to determine, from the four corners of a trial transcript and without benefit of first hand observations during the actual trial of the matter, whether a prosecutor made certain remarks deliberately or accidently. However, in this case, there are several indications that the prosecutor did not deliberately comment improperly as to the mitigating factor of Mr. Carter's lack of a significant history of prior criminal convictions and delinquency adjudications.

First, the Court notes as an aside, that the trial judge, who did have the benefit of first hand observations, determined that the prosecutor was simply commenting on the evidence. Trial Transcript Vol. VII at 1284. Second, as noted above, the comment was isolated and did not permeate the prosecutor's closing argument; rather, it was an isolated comment. Third, in his closing argument, Mr. Carter's counsel himself noted that Mr. Carter, "has gotten in trouble with fights and this and that, selling fake, cocaine which is against the law" and that Mr. Carter. "was involved at least in the car while the drug dealers were being robbed by Kenny Hill". This indicates that both defense counsel and the prosecutor, were, as the trial judge determined, simply commenting on the evidence rather than deliberately commenting improperly as to the mitigating factor at issue.

Applying the fourth *Serra* factor, this Court notes that Mr. Carter confessed to killing

---

[5] There are 25 transcript lines per transcript page. See, *e.g.,* Tr. 1283.

Ms. Messinger. Although Mr. Carter argued at trial that he did not intentionally kill, as this Court concluded in its analysis of Mr. Carter's Twenty-Sixth Cause of Action—his sufficiency of the evidence claim—there was more than enough evidence presented to the jury, including witness testimony and forensic evidence testimony, upon which it could find that the shooting was indeed intentional.

Finally, in reviewing the alleged prosecutorial misconduct in the context of the trial as a whole, this Court notes that following the closing arguments, the trial judge properly instructed the jury on the issues of what comprises evidence and mitigating factors. See *Ohio Jury Instructions* §§ 405.01, 405.10; Ohio Revised Code § 292904.04(B) and (C). In doing so, he specifically instructed the jury that the attorney's opening statements and closing arguments were not evidence. In addition, he instructed the jury that mitigating factors included, "[t]he offender's lack of significant history of prior criminal *convictions* and delinquency *adjudications*" (emphasis supplied).

This Court concludes that the Ohio Supreme Court's decision on Mr. Carter's prosecutorial misconduct claim is not contrary to or an unreasonable application of clearly established federal law. Mr. Carter's Thirtieth Cause of Action should be rejected.

## THIRTY-SIXTH CAUSE OF ACTION

**The judgment and conviction against Petitioner are void or voidable because of numerous errors which occurred during the guilt and mitigation phases of his trial, which were not harmless, but were pervasive and deprived Petitioner of a fair guilt and mitigation determination in violation of his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.**

Mr. Carter alleges that on appeal to the First District Court of Appeals, he raised twenty-seven assignments of error and of those twenty-seven assignments, the court failed to recognize the existence of any error. Mr. Carter's position is that it was the cumulative effect of

-76-

those errors that was critical, that when errors are so pervasive that the reliability of the process is called into question  they cannot be underestimated, and that to allow those errors to be unchallanged deprived him of a fair trial and mitigation hearing.

The Constitution entitles a criminal defendant to a fair trial, not a perfect one. *Delaware v. VanArsdall*, 475 U.S. 673, 681 (1986).  Indeed, there can be no such thing as an error-free, perfect trial.  *United States v. Hastings,* 461 U.S. 499, 508-09 (1983).

The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003).  "[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."  *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), citing *Scott v. Elo,* 302 F.3d 598, 607 (6th Cir. 2002), *cert. denied,* 537 U.S. 1192 (2003) and *Lorraine, supra.*

Mr. Carter has failed to identify or argue how any alleged cumulative effect of the alleged errors deprived him of his right to a fundamentally fair trial.  Nevertheless, even if this Court were to find that the alleged errors about which he complains rose to the level of a constitutional violation, which it has not, Mr. Carter's claim of cumulative error is not cognizable in federal habeas as a distinct claim.  Therefore, Mr. Carter's Thirty-Sixth Cause of Action should be rejected.

## FORTY-FIFTH CAUSE OF ACTION

**The judgment and conviction against Petitioner are void or voidable because the evidence at Petitioner's mitigation hearing did not establish beyond a reasonable doubt that the aggravating circumstance outweighed mitigating factors beyond a reasonable doubt, making Petitioner's death sentence a violation of his rights to due process, equal protection, and against cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.**

Mr. Carter's argument in support of his Forty-Fifth Cause of Action is that his counsel introduced evidence of five of the statutory mitigating factors and therefore the mitigation evidence was overwhelmingly in favor of finding that the mitigating factors outweighed the aggravating circumstances.  Mr. Carter's position is that the evidence of the mitigating factors, properly considered, was not outweighed beyond a reasonable doubt by the aggravating circumstances and therefore he should never have been sentenced to death.

### State court opinion

The Ohio Supreme Court engaged in an independent review of Mr. Carter's death sentence stating:

> The evidence shows beyond a reasonable doubt that the defendant was the principal offender in a felony-murder based on attempted aggravated robber.  R.C. 2929.04(A)(7).  Against this sole specification, the appellant asks us to weigh Carter's age (nineteen), the coercive influence of Hill (who was not charged with a death-penalty crime), Carter's relatively clean record (only two misdemeanor convictions), the fact that Carter was of low intellect, and that he had been raised in a less-than-ideal environment.  The defense also urges this court to include in its weighing any residual doubt it may have that Carter possessed the required element of specific intent to kill based on Carter's contention that he never meant to shoot Messinger.
>
> A
> *Youth of Offender*
>
> Where a defendant kills at the age of eighteen or nineteen this court has on several occasions held that the element of youth is entitled to little weight.  See *State v. Slagle* (1992), 65 Ohio St.3d 597, 613 ...; *State v. Hill* (1992), 64 Ohio St.3d 313, 335 ...; *State v. Byrd* (1987), 32 Ohio St.3d 79, 93 ...; *State v. Powell* (1990), 49 Ohio St.3d 255, 264 ...; *State v. Cooey* (1989), 46 Ohio St.3d 20.
>
> B
> *Poor Childhood*
>
> We find that mitigating value does exist based on negative aspects of

Carter's childhood, and accord it the little weight to which it is entitled.

## C
### *Influence of Cocaine Intoxication/Loss of Impulse Control*

In *State v. Benner* (1988), 40 Ohio St.3d 301, 319 ..., a defense expert testified as to the defendant's potential for drug-induced behavior, lack of anger control and mood instability. This court acknowledged that the testimony was worthy of consideration, but "not entitled to much weight." See, also, *State v. Lewis* (1993), 67 Ohio St.3d 200, 209 ... . Similarly, we have considered the evidence of cocaine and other drug intoxication presented by Carter and have accorded it the little value it merits.

## D
### *Residual Doubt*

The trial court, which observed the witnesses and their credibility, was firmly convinced that Carter possessed the intent required of both the crime of aggravated murder and the death specification. Although we have before us a cold record, the jury's recommendation and trial court's sentence are supported by ample evidence. We have fully considered the degree of residual doubt inherent in this record, and have accorded it the small weight we believe it is due.

## E
### *"Coercion" from Kenny Hill*

Where proven, the fact that a capital defendant was under "strong***domination" by another so as to cause him to act other than he ordinarily would is mitigating in nature. See *State v. Woods* (1976), 48 Ohio St.2d 127, 137 ... .

Low intelligence of the defendant and susceptibility to the influences of others are relevant to a determination of the existence of coercion. See *State v. Powell, supra,* 49 Ohio St.3d at 263 ...; *State v. Hooks* (1988), 39 Ohio St.3d 67, 69-70, ... . However, we find that Carter has not demonstrated that Hill exerted a level of "coercive" influence sufficient to justify us in attributing great weight to this mitigating evidence. Although Hill may well have been the primary instigator behind the attempted robbery, we find nothing to support Carter's implied assertion that "Hill made me do it." Rather we find that the

evidence instead leads to the conclusion that Carter willingly participated in the events of April 6.

F

*Disparate Sentencing of More Culpable Co-Conspirator*

In this case we do not find mitigating value in the fact that the two other participants in the robbery, Hill and Sims, were indicted on lesser charges than was Carter, and were not put in jeopardy of a death sentence. These individuals did not shoot and kill Messinger. The fact that Carter pulled the trigger, thereby performing the act which resulted in Messinger's death, is justification enough for his being treated more harshly that his co-conspirators. Cf. *State v. Jamison* (1990), 49 Ohio St.3d 182, 191 ,,, (disparity of sentence does not justify reversal when the sentence is neither illegal nor an abuse of discretion).

*Carter,* 72 Ohio St.3d at 561-63.

**Clearly established federal law**

In addressing Mr. Carter's Twenty-Sixth Cause of Action, *supra*, this Court identified and discussed the clearly established federal law on the issue of sufficiency of the evidence. That discussion is incorporated herein.

Mr. Carter's argument is that because he introduced evidence of five of the statutory mitigating factors, it was not possible for the aggravating circumstances to outweigh the mitigating factors beyond a reasonable doubt. However, Mr. Carter has not provided, nor is this Court able to find, any authority for that interesting proposition. It simply is not the law.

The Court turns to the issue of the weighing of the aggravating circumstances against the mitigating factors.

Under Ohio Revised Code § 2929.05(A), the Ohio appellate courts are required to "independently weigh" the aggravating circumstances against the mitigating factors:

The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel

-80-

> of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.

*Cooey v. Coyle,* 289 F.3d 882, 888 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003), citing, Ohio Revised Code § 2929.05(A).  The federal Constitution does not prohibit reweighing or harmless error analysis as a cure for weighing errors.  *Cooey, supra,* citing *Clemons v. Mississippi,* 494 U.S. 738 (1990).  Although not required to do so, once it elects to reweigh, the state appellate court must "give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background and crime."  *Cooey, supra,* citing, *Clemons,* 494 U.S. at 749.  The Sixth Circuit has expressly held that reweighing by the Ohio Supreme Court under Ohio Revised Code § 2929.05(A) satisfies the requirements of *Clemons*.  *Baston v. Bagley,* 420 F.3d 632, 637 (6th Cir. 2005), citing *Cooey,* 289 F.3d at 888-90.

### Analysis

Pursuant to Ohio Revised Code § 2929.05(A), the Ohio Supreme Court independently reexamined and reweighed the aggravating circumstances and mitigating factors in Mr. Carter's case.  Therefore, even assuming *arguendo* that the lower courts had erred in its weighing, the Ohio Supreme Court's reweighing would cure such error.

In its reweighing process, the Ohio Supreme Court first noted the aggravating circumstance of Mr. Carter being the principal offender in a felony-murder based on attempted aggravated robbery.  The court then carefully reviewed and discussed the mitigating factors which specifically related to Mr. Carter including the evidence about Mr. Carter's youth and poor childhood, the influence of cocaine intoxication/loss of impulse control, residual doubt, "coercion"

-81-

from Kenny Hill, and the disparate sentencing of Kenny Hill. In doing so, the court determined that each of the mitigating factors was entitled to little or small weight.

The Ohio Supreme Court followed the dictates of *Clemons* in that it gave individualized consideration to Mr. Carter's circumstances, his background, and the crime. See *Cooey*, 289 F.3d at 891. The Ohio Supreme Court's decision on this issue is not contrary to or an unreasonable application of clearly established federal law. Mr. Carter's Forty-Fifth Cause of Action should be rejected.

### FORTY-SIXTH CAUSE OF ACTION

**Petitioner's death sentence violates the Eighth (Cruel and Unusual Punishment Provision) and Fourteenth Amendments (Due Process and Equal Protection Clauses) because in conducting the proportionality review in Petitioner's case, the Ohio Supreme Court only compared Petitioner's case to other capital murder cases decided by that Court.**

In his Forty-Sixth Cause of Action, Mr. Carter argues that he was denied meaningful proportionality review of his death sentence in the state courts because those courts compared his sentence only to other cases in which the death sentence was imposed**.** Essentially, Mr. Carter complains that Ohio's process for proportionality review of death sentences is unconstitutional.

There is no federal constitutional requirement for proportionality review in capital cases. *Pulley v. Harris,* 465 U.S. 37 (1984). Ohio's proportionality review system complies with the dictates of the Due Process Clause. *Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2005), *cert. denied, ___* U.S. ___, 125 S.Ct. 1939 (2005), citing *Smith v. Mitchell,* 348 F.3d 177, 124 (6th Cir. 2003), *cert. denied,* 543 U.S. 841 (2004); *Wickline v. Mitchell*, 319 F.3d 813, 824 (6th Cir.), *cert. denied,* 540 U.S. 955 (2003). Since proportionality review is not required by the Constitution, states have great latitude in defining the pool of cases used for comparison. *Buell v. Mitchell,* 274 F.3d

337, 369 (6th Cir, 2001).  In limiting proportionality review to other cases already decided by the reviewing court in which the death penalty has been imposed, Ohio has properly acted within the wide latitude it is allowed.  *Id.*; see also, *Wickline* 319 F.3d at 824-25; *Byrd v. Collins,* 209 F.3d 486, 539 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001).

On the authority of the above-cited cases, Mr. Carter's Forty-Sixth Cause of Action should be denied.

### FORTY-EIGHTH CAUSE OF ACTION

**The Ohio State Courts have effectively converted Ohio's post conviction procedure into a meaningless ritual, rather than the statutorily mandated process for those convicted of a criminal offense to obtain redress for violations of their rights under the Ohio Constitution and the Constitution of the United States.  As a result, Petitioner's judgment and conviction are void or voidable under the Sixth, Eighth, and Fourteenth Amendments.**

The states have no constitutional obligation to provide post-conviction remedies.  *See Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987). The writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings because the post-conviction claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.  *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986).  Even if a petitioner can demonstrate that some error occurred during the state post-conviction proceedings, the claim is not cognizable on federal habeas review.  *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002).

Based on the authority of *Finley, Kirby* and *Roe,* Mr. Carter's Forty-Eighth Cause of Action should be denied.

Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice.

April 19, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Carter v. Mitchell\Carter_Merits.wpd